John Heimsoth, Plaintiff-Appellant, v. Falstaff Brewing Corporation, Defendant-Appellee.

Term No. 53–O–6.

Opinion filed December 14, 1953. Released for publication January 4, 1954.

JOHN R. SPRAGUE, of Belleville, and GILBERT ROSCH, of Granite City, for appellant.

MCGLYNN & MCGLYNN, of East St. Louis, for appellee.

MR. JUSTICE CULBERTSON delivered the opinion of the court.

This appeal arises from an action which was brought to recover damages occasioned by appellant, John Heimsoth (hereinafter called plaintiff) becoming ill from consuming a portion of a bottle of Falstaff beer, which contained a "prophylactic latex." At the trial with the jury, the court below granted defendant's motion at the close of plaintiff's evidence to find defendant not guilty and judgment was entered on the directed verdict in favor of appellee, Falstaff Brewing

29

Corporation (hereinafter called defendant). The sole question before us is whether or not the court properly directed a verdict at the close of plaintiff's case.

 A motion for directed verdict presents the single question of whether there is any evidence fairly tending to prove plaintiff's case, and the court on such motion should not weigh the evidence or consider its preponderance (*Blumb v. Getz*, 366 Ill. 273; *Peters v. Peters*, 376 Ill. 237). The evidence must be regarded in its aspect most favorable to the plaintiff against whom the motion is directed (*Mitchell v. Louisville & N. R. Co.*, 375 Ill. 545; *Shutan v. Bloomenthal*, 371 Ill. 244).

██ A bottling company impliedly warrants to the public that the product it sells when it leaves the control of the bottling company is fit for human consumption (*Williams v. Paducah Coca Cola Bottling Co., Inc.*, 343 Ill. App. 1; *Patargias v. Coca-Cola Bottling Co. of Chicago, Inc.*, 332 Ill. App. 117; 1951 Illinois Revised Statutes, chapter 56½, paragraphs 7, 8 and 41 [Jones Ill. Stats. Ann. 53.007, 53.008, 53.043]).

 The purchaser of food from the seller, in view of the implied warranty of quality in the sale of food, has a remedy either as against the person from whom the food was last purchased, or against any prior seller, or the producer of the article (*Williams v. Paducah Coca Cola Bottling Co., Inc., supra; Bowman v. Woodway Stores, Inc.*, 258 Ill. App. 307). If a customer, however, elects to fix a liability upon a remote seller he must assume the burden of proving that the condition of the food or the article at the time when it left the control of that remote seller was the same as immediately prior to its consumption, or that it had not been tampered with, or adulterated in the interim. That burden, it has been stated, could be fulfilled in a case of the type before us, in one of two ways: (First) By

proof that there was no reasonable opportunity for tampering with the bottle, in which case there would be an inference that the bottle was in the same condition as when it left the manufacturer's control; and, (secondly) If the evidence disclosed that there was a reasonable opportunity for tampering with the bottle, by proof that there actually was no tampering or adulteration (*Williams v. Paducah Coca Cola Bottling Co., Inc., supra*). The evidence on these issues may be direct or circumstantial, of necessity (*Williams v. Paducah Coca Cola Bottling Co., Inc., supra*). There is no requirement that the plaintiff prove his case beyond a reasonable doubt, or exclude every possible hypothesis suggesting a cause other than negligence. The maximum requirement is that there be a preponderance of the evidence that the defendant breached its warranty and that the breach resulted in the injury (*Coca-Cola Bottling Co. of Henderson v. Munn*, 99 F. 2d 190).

The evidence presented by plaintiff in the case before us showed that the defendant Brewing Company had a brewery in St. Louis, Missouri; that the bottle of beer which was the subject of the action left defendant's control when it was delivered to Murdock Distributing Company, which had a branch in East St. Louis, Illinois, about one block from the Riedel Tavern. The Riedel Tavern was one of the Murdock Distributing Company's customers. The beer was picked up by the Murdock Company in one of its own tractor trailers. These trucks were all closed, van bodies, with doors on them, and when the beer is loaded on the trucks it is the practice to keep the doors locked. The beer was then taken six miles from the defendant Brewing Company to the Murdock place of business in East St. Louis, in the locked vans. Thereafter, the beer was taken to the Murdock Distributing Company's

premises and placed in a warehouse in charge of the manager, which warehouse is kept under lock and key when no one is there, and under the supervision of the employees of Murdock when it is not locked. The manager of the warehouse testified that none of the Falstaff beer which was in the warehouse had ever been tampered with in his presence. The manager, of course, had no independent recollection of the particular bottle of beer. There was no specific evidence as to how long the beer had been in the possession of the Murdock Distributing Company. Falstaff beer was delivered at the Riedel Tavern and taken downstairs by Mr. Riedel. The beer was never stored on the street floor of the Riedel tavern.

On April 2, 1951, beer, including the particular bottle of beer in question, was brought up from the basement by Riedel. The beer was put in a cooler-box by Riedel, underneath the bar. From 4:00 p. m. to 10:00 p. m. on April 2, 1951, a Phil Lendfried was the bartender at the bar. He testified he had not tampered with the bottle in question and no one else tampered with the bottle. He also testified that he had been a bartender for nine years and had dispensed thousands of bottles of beer, and knew the difference between flat beer and beer with life in it, and stated that if the cap comes off with a pop the beer has life in it, but if the cap comes off easily and there is no foam the beer is dead, or flat, and that beer which had been opened would be flat. This same observation was concurred in by another bartender who testified on behalf of plaintiff. Both bartenders testified that if the cap had been taken off the bottle of beer and put back on the bottle of beer, the beer inside the bottle would get flat, and that it would take about an hour or so for the bottle to get flat.

The bartender also testified that he remembered the plaintiff coming into his place of business about 10:00

32

or 10:30, and he recalled the plaintiff purchasing the bottle of Falstaff beer. The bartender said he took the cap off the bottle and when he took the cap off it was a live bottle of beer, made a popping noise, and foamed. Another witness confirmed the fact that the beer had foam on it and was a live bottle of beer. The bartender testified that no one tampered with the bottle during the six hours he was on duty, from 4:00 p. m. to 10:00 p. m. on April 2, 1951.

The plaintiff testified that he drank about half a bottle of beer and as he was drinking it he felt a slime go over his throat and he immediately had to vomit. After he had vomited and come back to the table he asked a friend who was sitting with him, who also testified, what was in the bottle, and both he and the friend, and the bartender, and other witnesses, looked at the bottle and saw that it contained a foreign substance which was a substance often referred to as a "rubber prophylactic contraceptive latex." The plaintiff, another witness, and three doctors, testified that plaintiff became ill and suffered nausea, sustained a fixation neurosis, and had considerable loss in his business as a result of having consumed the bottle of beer with the latex prophylactic in it.

At the conclusion of all the evidence for the plaintiff, the trial court stated, "It is the opinion of the Court that after consideration of the testimony in its most favorable light, that the plaintiff has failed to prove his case in view of the necessary proof to be made by him, as set forth in the case of *Williams v. Paducah Coca-Cola Bottling Co., Inc., supra*. The Court takes the position that even by considering the plaintiff's evidence in the most favorable aspect, the plaintiff has failed to prove that there was no reasonable opportunity for tampering with the bottle of beer in question, and where the evidence has disclosed there was rea-

sonable opportunity for tampering, plaintiff has failed to prove that there actually was no tampering or adulteration." The court entered an order directing the verdict. Plaintiff filed appropriate supplementary motions and the issue before this court is whether the court below properly allowed the motion, as indicated.

The plaintiff's position is that the testimony introduced in evidence raises a question of fact which should have been submitted to the jury, as to whether or not there had been a reasonable opportunity to tamper with the Falstaff beer in question. In the *Williams v. Paducah Coca Cola Company* case referred to, the defendant had denied that it had bottled the coca-cola in question, and that in the particular store in consideration in that case, beverages from seven different companies were delivered and placed on the floor in the front of the store, which was accessible to the general public and to all the different competitors of the defendant, and the cooler in which the beverages were cooled was accessible to anyone who desired to raise the lid and reach the container, and customers frequently served themselves out of the cooling case. In the case before us, the evidence showed that the beer was placed in the basement and under the control of Mr. Riedel and his employees; and that the beer had been picked up at the brewery and transported in reasonably secure fashion from the brewery to the warehouse, stored in the warehouse in a manner which would not necessarily indicate an opportunity for tampering, and was delivered to the tavern in such a manner as would not necessarily indicate an opportunity for tampering. In the case of *Sullivan v. Coca Cola Bottling Co. of Chicago, Inc.*, 313 Ill. App. 517, the court found that testimony that plaintiff purchased the coca-cola from a pharmacist, who opened the bottle and poured the contents in a glass in his presence, and that

34

the plaintiff became ill and nauseated, would present a question of fact for the jury. Similarly, in *Duval v. Coca-Cola Bottling Co.*, 329 Ill. App. 290, and in *Patargias v. Coca-Cola Bottling Co. of Chicago*, 332 Ill. App. 117, the circumstance that the evidence shows that the bottle was sealed and capped was given consideration by the court in determining that the testimony was sufficient to justify allowing a jury to pass upon the questions of fact.

When the product of the manufacturer involves a sealed or capped bottle of the type under consideration before us, and particularly, where the evidence shows circumstances inconsistent with tampering, such as the foaming of the beer upon the bottle being opened, the direction of a verdict on the ground that there was a possibility of tampering through some activity which would not normally or reasonably be anticipated or probable on the basis of the evidence presented, is not justified. It would raise an unreasonable and impossible standard of proof which would require that a claimant who seeks to recover as against a manufacturer must trace the particular bottled and sealed item, minute by minute, from the time of its delivery by the manufacturer until actual consumption by the consumer, before a plaintiff would have the right to a jury determination of whether or not there had been tampering or possible tampering, as a question of fact. Under the facts and circumstances in the case we believe that the trial court erred in allowing the motion for a directed verdict.

The judgment of the circuit court of St. Clair county will, therefore, be reversed and this cause will be remanded to such court for a new trial.

*Reversed and remanded.*

SCHEINEMAN, P. J. and BARDENS, J., concur.