Malcolm H. **WALLACE**

v.

The **COCA–COLA BOTTLING
PLANTS, INC.**

Supreme Judicial Court of Maine.

Sept. 17, 1970.

Berman, Berman & Simmons, by Jack H. Simmons, Lewiston, for plaintiff.

Marshall, Raymond & Beliveau, by John G. Marshall, Lewiston, for defendant.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE, WEATHERBEE and POMEROY, JJ.

POMEROY, Justice.

At the conclusion of a trial, an Androscoggin County jury awarded Plaintiff $2,000 damages against the Defendant.

The complaint, the filing of which commenced this action, alleged Defendant was liable to the Plaintiff because of, (a) a breach of warranty and (b) negligence. The case was submitted to the jury only on the issue of negligence, the breach of warranty count having been removed from the jury's consideration by the Court on Defendant's motion. The Plaintiff has not appealed from this ruling.

In the posture in which the case is before us for review, we must accept the evidence in the light most favorable to the Plaintiff. Scammon v. City of Saco, Me., 247 A.2d 108.

We conclude the jury was justified in finding from the evidence.

On December 23, 1966, the Plaintiff entered a store known as Lindley's in Canton, Maine. After ordering a pizza he went to the back of the store in the company of a friend and there removed a Coca-Cola bottle from a cooler and opened it. The cooler was not coin-operated and contained not only Coca-Cola bottles but other bottled products as well. Customers in the store usually served themselves from the cooler, a practice having the owner's approval.

After opening the bottle, Plaintiff placed it to his lips and drank from it. While doing so, a foreign object came in contact with his lips and tongue. He thereupon called the owner of the store to the cooler and in her presence poured the remaining contents of the bottle into a cup. It was then discovered the foreign object was an unpackaged prophylactic. When the bottle was opened it reacted normally, "the cap came off as it normally would." Upon opening the bottle the Plaintiff heard a sound, "kind of a fizzle like a bottle does when it opens, the carbonation I presume." The Plaintiff became ill after he returned home and began to think about his experience.

The jury was justified in believing from the evidence that the illness persisted for some time and caused the Plaintiff to be absent from his work. The Coca-Cola bottle had been purchased from the Defendant.

The Defendant says in its Points of Appeal:

"1. The Court erred in admitting certain testimony on the part of the plaintiff as to the cause of his sickness or illness which the plaintiff claimed followed his consuming some of the contents of the bottle of Coca-Cola.

"2. It was error to submit the matter to the jury because there was no evidence from which it could be inferred that the defendant was negligent and no evidence that there was any foreign matter in the bottle of Coca-Cola when it was delivered to the store where it was allegedly purchased.

"3. It was error on the part of the Court to deny the defendant's motion for a new trial.

"4. It was erroneous on the part of the Court to submit the matter to the jury on the issue of damages because there was no injury to the plaintiff, that is no physical injury that could be compensated for under the rules of our law.

"5. There was nothing in the plaintiff's evidence to show that there was any contamination or deleterious substance that rendered the contents of the bottle Coca-Cola allegedly purchased by the plaintiff that was harmful to him or to any reasonable person. There was no evidence that the contents of the bottle were injurious to any human."

We start our discussion, as we must in view of the jury's finding, from the premise that the bottle in which the foreign object was found was purchased from the Defendant and at the time of the purchase by Plaintiff there was a foreign object in it.

This having been established, the only possible conclusions to be reached are, (a) the foreign object was in the bottle when it left the Defendant's plant and was delivered to the storekeeper, or (b) there was tampering with the bottle after it left the Defendant's plant and before it was purchased from the storekeeper by the Plaintiff. Was it the Plaintiff's responsibility to negate tampering or was it the responsibility of the Defendant to establish the fact of tampering?

This question is one of first impression in this State. Authorities are not in accord in other jurisdictions. See for example: Ashland Coca-Cola Bottling Co. v. Byrne, 258 S.W.2d 475 (Ky.1953); Williams v. Paducah Coca-Cola Bottling Co., 343 Ill. App. 1, 98 N.E.2d 164; Heimsoth v. Falstaff Brewing Corp., 1 Ill.App.2d 28, 116 N.E.2d 193; Jordan v. Coca-Cola Bottling Company of Utah, 117 Utah 578, 218 P.2d 660; LeBlanc v. Louisiana Coca-Cola Bottling Co., 221 La. 919, 60 So.2d 873; Dr. Pepper Co. v. Brittain, 234 Ala. 548, 176 So. 286; Escola v. Coca Cola Bottling Co. of Fresno, 24 Cal.2d 453, 150 P.2d 436; Wichita Coca-Cola Bottling Co. v. Tyler, Tex.Civ.App., 288 S.W.2d 903; Keller v. Coca-Cola Bottling Co. of Walla Walla, 214 Or. 654, 330 P.2d 346.

In Lajoie v. Bilodeau, 148 Me. 359, 93 A.2d 719 (1953), our Court said:

"The mere presence of the brush in the bottle is evidence of negligence on the part of the defendant, where there is testimony which, if believed, indicates that the bottle had not been opened since leaving the defendant bottler. It could be properly inferred that the brush was there when the processing of the bottle began, or was introduced during the filling of the bottle with ginger ale, and that there was negligence on the part of the defendant in permitting it to get into the bottle * * *."

We hold the rule in Maine to be that in those cases involving beverages sold in a capped and airtight bottle a plaintiff who has been damaged by a foreign body in the bottle makes out a prima facie case when he establishes that:

1. The bottle he purchased was processed by the Defendant;

2. There was nothing unusual about it when it was opened.

This is so even though the cap on the bottle is capable of being removed and replaced, and the fact of uncapping and recapping is difficult to discover.

If a defendant asserts there has been tampering with the bottle after it left its plant, such claim is an affirmative defense. The burden of establishing such defense is upon the defendant.

" * * * it is difficult to discern why a plaintiff, suffering illness as the result of consuming deleterious matter contained in a bottled beverage, should

shoulder the burden of establishing a negative fact by producing the middleman, or others if need be, to show that no one handling the bottle after it left the defendant's plant removed the cap and permitted foreign substances to enter its contents. Properly, since proof of tampering by others would provide an avenue of escape from liability, it would seem to be a matter of defense."

LeBlanc v. Louisiana Coca-Cola Bottling Co., 221 La. 919, 60 So.2d 873, at 875.

We turn now to a consideration of the Defendant's claim that there was no physical injury received by the Plaintiff for which compensation could be had.

In what was then a case of first impression, the Supreme Court of Massachusetts in 1897 decided the oft-quoted case of Spade v. Lynn & B. R. Co., 168 Mass. 285, 47 N.E. 88, 38 L.R.A. 512. Mr. Justice Allen, speaking for the Court, said:

"The law of negligence, in its special application to cases of accidents, has received great development in recent years. The number of actions brought is very great. This should lead courts well to consider the grounds on which claims for compensation properly rest, and the necessary limitations of the right to recover. We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and, if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without. The logical vindication of this rule is that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright, and that this would open a wide door for unjust claims, which could not successfully be met."

More recently *Spade* was reaffirmed in Sullivan v. H. P. Hood & Sons, 341 Mass. 216, 168 N.E.2d 80 (1960). In that case, an able opinion by Mr. Chief Justice Wilkins, the Court declared: "We have not been asked to overrule the Spade case and we are not disposed to do so."

In the opinion specific attention was directed to the application of the *Spade* rule in two food cases. Wheeler v. Balestri, 304 Mass. 257, 23 N.E.2d 132; Kennedy v. Brockelman Bros., Inc., 334 Mass. 225, 134 N.E.2d 747.

In *Sullivan* Chief Justice Wilkins described the *Spade* rule as having been subjected to considerable refinements. Homans v. Boston Elev. Ry., 180 Mass. 456, 62 N.E. 737; Freedman v. Eastern Mass. St. Ry., 229 Mass. 246, 12 N.E.2d 739, and other cases were cited as examples of the refinements to which he referred.

Freedman v. Eastern Mass. St. Ry., supra, is of particular interest because in it is said:

"We are of opinion that it cannot be said as a matter of law that a blow or impact must be shown to prove a physical injury from without. The phrase 'from without' as used in our cases excludes purely psychological or emotional consequences when they stand alone, but includes all physical injury not resulting solely from mental shock or emotional disturbances. The question, therefore, in each such case is whether the physical injury resulting from the defendant's negligence is in fact one *which was not caused solely by mental disturbances."

In 1921 our Court quoted Spade with approval. Herrick v. Evening Pub. Co., 120 Me. 138, 113 A. 16. By that case the rule in Maine became:

"In case of physical injury to the person caused by negligence, mental suffering resulting from such injury is a legitimate element of damage; but if no bodily injury is alleged or proved, there

can be no premise upon which to base a conclusion of mental suffering. * * * Such elements of damage, when there is no physical injury, are outside the principle of compensation."

This is the first occasion we have had to reexamine the rule in *Herrick*. *Spade's* reasoning on which *Herrick* was based, has been the object of much critical comment, in legal periodicals and cases. See, for example: Goodrich, Emotional Disturbance as Legal Damage, 1922, 20 Mich.L.Rev. 497, listing, upon medical authority, a variety of physical symptoms, from accelerated pulse to Pyorrhea; Tibbetts, Neurasthenia, the Result of Nervous Shock, as a Ground for Damages, 1904, 59 Cent.L.J. 83; Earengey, the Legal Consequences of Shock, 1934, 2 Medico-Legal & Crim.Rec. 14; Crile, The Origin and Nature of the Emotions, 1915; Throckmorton, Damages For Fright, 1921, 34 Harv.L.Rev. 260, 270, 57 Am.L. Rev. 828, 153 L.T. 24, 89. Chiuchiolo v. New England Wholesale Tailors, 1930, 84 N.H. 329, 150 A. 540; Simone v. Rhode Island, 28 R.I. 186, 66 A. 202; Kenney v. Wong Len, 81 N.H. 427, 128 A. 343; Bosley v. Andrews, 393 Pa. 161, 142 A.2d 263 (1958). (Dissenting opinion of Musmanno, J.)

The New Hampshire Court has long rejected the reasoning in *Spade,* starting with Chiuchiolo v. New England Wholesale Tailors, supra, in 1930. Mr. Justice Allen, speaking for a unanimous Court, said:

"The only possibly adequate reason suggested for the exception to the rule of liability is that of expediency, and the argument is made that in the long run justice will be better promoted with, rather than without, the exception, because otherwise 'this would open a wide door for unjust claims, which could not successfully be met.' "

The opinion then discusses with compelling logic the incongruity of allowing damages for pain and suffering when accompanied by physical harm, however, slight,

and denying it in those many cases in which the proof is clear there was mental suffering induced by a negligent act, but there was no physical impact. The discussion concludes with these words:

"If the subject has not caused undue judicial alarm over the prospect of a multitude of actions for pretended injuries or pretended causes of trouble obscure in their nature and not readily tested objectively, it is at least a doubtful issue in which the burden in showing good reason for the denial of liability is not sustained. That it may be wise and better to have such a rule is the most that is shown. This falls short of making out a case for it."

■ In the light of advances which have been made by medical science and the improvement in investigatory techniques since this Court decided *Herrick* in 1921, we decline to follow it any longer. Instead, we adopt the rule that in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably foreseeable mental and emotional suffering by a reasonably foreseeable plaintiff, such proven damages are compensable even though there is no discernable trauma from external causes. The mental and emotional suffering, to be compensable, must be substantial and manifested by objective symptomatology.

In applying this rule, however, we recognize that it must be so limited within the bounds of foreseeability as to preclude a host of false and groundless claims.

■ In the case at hand such proximate causal relationship was established. The jury found that the defendant negligently caused or permitted a foreign object to enter a bottle of Coca-Cola it had processed. The foreign object was of such a loathsome nature it was reasonably foreseeable its presence would cause nausea and mental distress upon being discovered in the

place it was by a consumer *who was in the process of drinking from the bottle*. The mental distress was manifested by vomiting.

The jury found the negligence of the defendant produced and was the proximate cause of the exact effect one could reasonably expect under the circumstances. The ordinary knowledge acquired from everyday experience by the jurors justifies such conclusion. No expert medical testimony on the point was necessary.

The jury, whose duty it was, found the facts. We cannot, on the record before us, say they were not justified.

The amount awarded as damages seems high to us. However, damage assessment is the sole province of the jury and the amount fixed must stand unless it can be demonstrated that, "the jury acted under some bias, prejudice or improper influence, or made some mistake of law or fact." Cayford v. Wilbur, 86 Me. 414, 29 A. 1117.

"\* \* \* It is not for the reviewing court to interfere merely because the award is large, or because the court would have awarded less. Unless a verdict very clearly appears to be excessive, upon any view of the facts which the jury are authorized to adopt, it will not be disturbed. \* \* \*"

Baston v. Thombs, 127 Me. 278, 281, 143 A. 63, 64. (Quoted in McMann v. Reliable Furniture Co., 153 Me. 383, at 391, 140 A.2d 736.)

Since no appeal was taken from the Order of the Superior Court Justice dismissing the Count for breach of implied warranty of fitness, we have not discussed whether or not such dismissal was proper.[1]

The entry must be

Appeal denied.

WILLIAMSON, C. J., sat at argument but retired before decision.

1. For interesting discussion of implied warranty in food cases see Manzoni v. Detroit Coca-Cola Bottling Co., 363 Mich. 235, 109 N.W.2d 918. Also of especial interest see: the incisive concurring opinion of Mr. Justice Traynor (later Mr. Chief Justice Traynor) in Escola v. Coca-Cola Bottling Co. of Fresno, 24 Cal.2d 453, 150 P.2d 436. See also U.C.C. 11 M.R.S.A. § 2-314.