Peter **VICNIRE**

v.

**FORD MOTOR CREDIT COMPANY et al.**

Supreme Judicial Court of Maine.

May 1, 1979.

Berman, Berman & Simmons, P. A. by Paul F. Macri (orally), Gary Goldberg, Lewiston, for plaintiff.

Preti, Flaherty & Beliveau by David M. Cohen, Portland (orally), for Ford Motor Credit Corp.

Jonathan S. Piper, Portland (orally), for Ford Life Ins. Co.

Herbert A. Crommett, Portland, for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY and GODFREY, JJ.

McKUSICK, Chief Justice.

Defendants Ford Motor Credit Company (hereafter "Ford Credit") and Ford Life Insurance Company (hereafter "Ford Life") appeal from a Superior Court judgment entered on a jury verdict awarding plaintiff Peter Vicnire damages on claims arising out of Ford Credit's financing of his purchase of a new pickup truck and Ford Life's insuring of Vicnire's ability to make the requisite installment payments in the event of his death or disability. Plaintiff cross-appeals, challenging parts of the jury's verdict and certain actions by the presiding justice. We deny plaintiff's cross-appeal; we deny in part and sustain in part Ford Credit's appeal; and we deny Ford Life's appeal.

On June 8, 1974, plaintiff Vicnire purchased a new pickup truck from Auburn Motor Sales, Inc., on an installment plan. Auburn Motors assigned the contract to defendant Ford Credit. In addition, Vicnire purchased credit life and disability insurance from Ford Life. James Murray, a salesman employed by Auburn Motor Sales,

Inc., handled all negotiations with plaintiff covering the purchase and financing of the truck and the purchase of the insurance.

On July 18, 1974, Vicnire became totally disabled and had to leave his job. The disability stemmed from an automobile accident in 1969 in which Vicnire had sustained cranial injuries. Shortly after his layoff, plaintiff wrote Ford Life requesting that the company make subsequent payments on his truck pursuant to the disability policy. Ford Life refused, claiming that Vicnire's disability was not covered by the policy since it resulted from an injury sustained prior to the execution of the contract.

Plaintiff made the installment payments for July and August 1974 but defaulted in September. On October 8, 1974, an employee of Ford Credit left a letter requesting payment at Vicnire's house while he was absent. On October 23, 1974, employees of Ford Credit repossessed plaintiff's truck by taking it from his driveway at 1:00 a. m. without notifying him of the repossession.

On April 28, 1975, plaintiff brought an action against Ford Credit and Ford Life. Against Ford Credit plaintiff sought damages for (1) alleged violations of the former Truth-in-Lending Act, P.L.1969, ch. 423, § 35, 9 M.R.S.A. §§ 3901 et seq. (repealed by P.L.1975, ch. 446, § 1, effective June 12, 1975); (2) alleged conversions of $650 cash from plaintiff's home by an employee of Ford Credit on October 8, 1974, and certain items of personal property in the truck at the time of repossession; and (3) mental suffering resulting from intentional acts of employees of Ford Credit. Against Ford Life plaintiff sought to enforce Ford Life's obligation on the contract for credit disability insurance.

After a full trial the presiding justice propounded special interrogatories to the jury on critical aspects of the case. The jury found for plaintiff on all claims against defendants. Defendants then filed motions for judgments n. o. v. and new trials. The presiding justice granted defendant Ford Credit judgment n. o. v. in regard to the jury's finding for plaintiff

that (1) Ford Credit had converted $650 from plaintiff's home and (2) Ford Credit had engaged in a course of conduct which inflicted actionable mental suffering on plaintiff. The presiding justice denied all other motions and granted plaintiff interest on the damages award computed in accordance with the interest statute in effect on the date of entry of judgment, 14 M.R.S.A. § 1602 (Supp.1978–79).

## I. *Vicnire v. Ford Credit*

### A. *Truth-in-Lending Act*

Both parties on appeal challenge specific portions of the presiding justice's instructions regarding plaintiff's claim under the former "Truth-in-Lending Act," P.L.1969, ch. 423, § 35, 9 M.R.S.A. §§ 3901 et seq. (repealed eff. June 12, 1975). Defendant Ford Credit contends that the presiding justice erred in stating as a matter of law that the parties had engaged in a "consumer credit transaction" within the coverage of the act, while plaintiff Vicnire argues that the presiding justice erred in limiting his damages to $1,000 regardless of the number of specific violations of the act found by the jury.

We find merit in neither contention. First, defendant Ford Credit waived its right to challenge the presiding justice's instruction on appeal by failing to raise an objection below. *Perry v. Butler,* 142 Me. 154, 48 A.2d 631 (1946). But even if the point had been properly preserved, the record fully justifies the presiding justice's decision to rule as a matter of law that the parties engaged in a "consumer credit transaction" to which the provisions of the Truth-in-Lending Act applied. Former 9 M.R.S.A. § 3903 defined a consumer transaction as one in which "the money, property, or services which are the subject of the transaction are primarily for personal, family, household or agricultural purposes," while section 3904 excluded from the act "[c]redit transactions involving extensions of credit for business or commercial purposes . . . ." Vicnire's unrebutted testimony that the truck was the only family

vehicle and his sole means of transportation to his regular job conclusively established that his use of the truck was primarily personal. Evidence presented by Ford Credit to show that Vicnire also used the truck to transport cattle that he sold as a sideline was clearly insufficient to allow a reasonable juror to find in favor of Ford Credit. Nor could a reasonable juror have placed much weight on the fact that a clause of the purchase contract stated that the purchase was for "Business or Commercial Use," in light of the admission of Ford Credit's former office manager that the clause was included in all contracts for the sale of trucks regardless of the intended use of the vehicle.

■ Similarly, there is no error in the presiding justice's conclusion that former section 3922 of the Maine Truth-in-Lending Act limited plaintiff's damages to $1,000 regardless of the number of violations of the act by a defendant in a single transaction. Section 3922 provided:

"[A]ny creditor who fails *in connection with any consumer credit transaction* to disclose to any person any information required under this chapter to be disclosed to that person is liable to that person in an amount equal to the sum of:

"A. Twice the amount of the finance charge *in connection with the transaction,* except that the liability under this paragraph shall not be less than $100 nor greater than $1,000; . . . ." (Emphasis added)

The emphasized portions of this section evidence a clear legislative intent to place a $1,000 ceiling on damages for all violations of the statute that arose in any single credit transaction. Plaintiff urges us to depart from the plain meaning of section 3922 on the basis of a federal case. *Thomas v. Myers-Dickson Furniture Co.,* 479 F.2d 740 (5th Cir. 1973), which interpreted a similar provision of the federal version of the truth-in-lending act, 15 U.S.C.A. § 1640(a)(1) (1969), to allow multiple recoveries, and a subsequent congressional amendment of the federal act to state expressly that multiple recoveries would not be allowed, 15 U.S.C.A. § 1640(g) (1974). We reject both arguments. The *Thomas* case is distinguishable from the instant case on its facts,[1] and the subsequent congressional amendment may well have reflected a clarification of Congress' original intent rather than an acknowledgment that the former section allowed multiple recoveries.

## B. *Conversion*

The jury found that employees of Ford Credit converted (1) certain items of personal property which were in Vicnire's truck at the time of its repossession and (2) a bag containing $650 in cash which Vicnire had left unattended inside his house. On motion of defendant, the presiding justice set aside the jury's verdict finding that Ford Credit's employees had converted $650 in cash, but upheld the jury's finding that they converted the property left in plaintiff's truck. Both parties appeal from adverse rulings of the presiding justice.

■ In challenging the presiding justice's grant to defendant of judgment n. o. v. regarding the alleged conversion of $650, plaintiff argues that the evidence was sufficient to support the jury's verdict. We disagree. The sole evidence linking an employee of Ford Credit to the crime was Vicnire's own testimony that he left $650 in a paper bag inside his house on October 8, 1974, and that when he returned he found that the money was missing and that a letter from Ford Credit had been left on a table inside his home. A Ford Credit employee admitted visiting plaintiff's house on October 8, 1974, but insisted that he had left the letter in a screen door and never entered the house. We concur with the

---

1. *Thomas v. Myers-Dickson Furniture Co., supra,* involved a series of periodic statements issued to the consumer on an open end credit account. The Fifth Circuit found that each periodic statement violated the federal truth-in-lending act and that each statement constituted a separate transaction for the purpose of determining damages. In the instant case, all violations occurred in a single transaction on June 8 when the parties executed the contracts in question.

presiding justice's conclusion that this evidence was "entirely lacking in sufficiency" to support the jury's verdict in favor of the plaintiff.

■■ Nor do we find merit in defendant's contention that the presiding justice should have granted it judgment n. o. v. in regard to plaintiff's second conversion claim for $350 of personal property on grounds that the evidence failed to establish (1) that plaintiff had complied with a contractual provision requiring plaintiff to make written demand for the items in question within a specific time period and (2) that the employees of Ford Credit who allegedly converted the property were acting within the scope of their employment or that Ford Credit had ratified their actions. By failing to raise the issue below, defendant waived its right to argue on appeal that the contractual provision requiring written notice bars plaintiff's recovery. *Reville v. Reville,* Me., 289 A.2d 695, 697 (1972). In regard to defendant's second argument, we note that Vicnire testified that the items in question were in his truck at the time of the repossession and that the employees of Ford Credit testified that they had taken an inventory of personal property found in the truck. Although the employees denied having converted Vicnire's property, the evidence was sufficient to permit the jury to infer that the employees had removed and retained the property and that Ford Credit had ratified their actions by failing to provide for the return of his property.

## C. *Emotional Distress*

The jury awarded plaintiff $5,000 in compensatory damages and $10,000 in punitive damages for mental suffering allegedly resulting from the intentional acts of defendant. The presiding justice set aside the jury's award of compensatory damages, finding that plaintiff had failed to establish all the elements of the tort of intentional infliction of emotional distress, but upheld the award of punitive damages. On appeal, plaintiff urges the court to reinstate the verdict for compensatory damages, while defendant argues that the punitive damages award should be set aside.

The recognition of the protection that the law affords the interest in freedom from emotional distress is of relatively recent vintage in Maine. Prior to 1970, a plaintiff could not recover damages for negligently inflicted mental suffering except in connection with recovery of damages for physical injury caused by the same negligent act. As this court stated in *Herrick v. Evening Pub. Co.,* 120 Me. 138, 140, 113 A. 16, 17 (1921):

"In case of physical injury to the person caused by negligence, mental suffering resulting from such injury is a legitimate element of damage; but if no bodily injury is alleged or proved, there can be no premise upon which to base a conclusion of mental suffering. [citation omitted] Such elements of damage, when there is no physical injury, are outside the principle of compensation. [citation omitted] At common law it was well settled that mere injury to the feelings or affections did not constitute an independent basis for the recovery of damages."

In *Wallace v. Coca-Cola Bottling Plants, Inc.,* Me., 269 A.2d 117 (1970), the court specifically rejected the *Herrick* rule and recognized that a plaintiff may under appropriate circumstances recover for the negligent infliction of emotional distress. In *Wallace,* the plaintiff consumer became ill after discovering an unpackaged prophylactic in a bottle of soft drink that had been purchased from the defendant. Although the plaintiff suffered no physical injury resulting from the immediate impact of the prophylactic, the court upheld the plaintiff's recovery, stating:

"In the light of advances which have been made by medical science and the improvement in investigatory techniques since this Court decided *Herrick* in 1921, we decline to follow it any longer. Instead, we adopt the rule that in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably foreseeable mental and emotional suffering by a

reasonably foreseeable plaintiff, such proven damages are compensable even though there is no discernable trauma from external causes." *Id.* at 121.

However, the court cautioned: "The mental and emotional suffering, to be compensable, must be substantial and manifested by objective symptomatology." *Id.* at 121.[2] The plaintiff in *Wallace* satisfied this requirement since the evidence established that plaintiff's illness flowing from his mental distress "persisted for some time and caused the Plaintiff to be absent from his work." *Id.* at 118.

Although the court in *Wallace* had no occasion to address the question of a defendant's liability for intentional, as opposed to negligent, infliction of emotional distress, it is axiomatic that an interest which merits protection from an unintentional interference must be shielded from intentional intrusions as well. Indeed, a defendant's liability for the intentional infliction of emotional distress has been recognized in most other jurisdictions, as reflected in § 46 of the *Restatement (Second) of Torts* (1965), which provides:

"§ 46. Outrageous Conduct Causing Severe Emotional Distress

"(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."

We now adopt the rule of liability stated in the Restatement of Torts. We expressly recognize that a defendant may be liable for engaging in extreme and outrageous conduct and intentionally or recklessly inflicting severe mental distress on a

plaintiff. Specifically, in order to recover for the intentional infliction of emotional distress, a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct, *Restatement (Second) of Torts* § 46, Comment *i*; (2) the conduct was so "extreme and outrageous" as to exceed "all possible bounds of decency" and must be regarded as "atrocious, and utterly intolerable in a civilized community," *Restatement (Second) of Torts* § 46, Comment *d*; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was "severe" so that "no reasonable man could be expected to endure it." *Restatement (Second) of Torts* § 46, Comment *j*. Although "severe" emotional distress is usually manifested by "shock, illness or other bodily harm," such objective symptomatology is not an absolute prerequisite for recovery of damages for intentional, as opposed to negligent, infliction of emotional distress. *Restatement (Second) of Torts* § 46, Comment *k*. In appropriate cases, "severe" emotional distress may be inferred from the "extreme and outrageous" nature of the defendant's conduct alone. *Id.*

To summarize, a plaintiff may recover damages for emotional distress resulting from the tortious conduct of a defendant in three distinct situations. First, as traditionally provided, mental distress or "pain and suffering" accompanying physical injury caused by tortious conduct is compensable. Second, as established in *Wallace,* a plaintiff may recover damages for emotional distress resulting from negligent

---

2. In holding that a defendant may be liable for the negligent infliction of substantial mental distress manifested by objective symptomatology, the Law Court brought the rule of this state firmly in line with the law of other jurisdictions as reflected in § 313 of the *Restatement (Second) of Torts,* which provides:

"§ 313. Emotional Distress Unintended
"(1) If the actor unintentionally causes emotional distress to another, he is subject to liability to the other for resulting *illness or bodily harm* if the actor

"(a) should have realized that his conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and
"(b) from facts known to him should have realized that the distress, if it were caused, might result in *illness or bodily harm.*" (Emphasis added)
*See also Restatement (Second) of Torts* §§ 312, 436, 436A.

conduct (even though that conduct caused no direct physical injury) if the distress is "substantial and manifested by objective symptomatology," that is, results in illness or bodily harm. And, third, as recognized in this opinion, a defendant is subject to liability if he engages in extreme or outrageous conduct that intentionally or recklessly inflicts severe emotional distress upon another.

 In the instant case, the presiding justice set aside the jury's verdict awarding plaintiff $5,000 in compensatory damages for mental suffering on grounds that "[t]here was no evidence of severe or substantial mental suffering, no evidence of objective symptomatology." A careful review of the record compels agreement with the presiding justice's conclusion. The sole evidence of plaintiff's emotional distress was his own testimony that he felt "kind of down" and "mad" and "nervous for about a month." As a matter of law that evidence could not support a verdict for plaintiff on a theory of negligent infliction of mental distress, since Vicnire suffered no illness or bodily harm (i. e., no objective symptomatology) as a result of his alleged distress. Even were the jury to conclude that defendant by extreme and outrageous conduct intentionally or recklessly inflicted mental distress upon Vicnire, there is no evidence that his alleged mental distress rose to that degree of severity that is required by the law to justify imposing liability upon defendant. This jury heard no evidence from which it could conclude that plaintiff's mental distress was so "severe" that "no reason-able man could be expected to endure it." In short, the presiding justice's order setting aside the jury's verdict of $5,000 in compensatory damages for emotional distress was entirely proper.[3]

 However, the presiding justice's denial of defendant's motion of judgment n. o. v. in regard to the jury's award of $10,-000 in punitive damages is more troublesome. As defendant correctly observes, both the instructions and the interrogatories inextricably linked the award of punitive damages with a finding by the jury that Ford Credit was liable for the intentional infliction of mental distress.[4] Punitive damages must be based on underlying tortious conduct by the defendant. *Stacy v. Portland Pub. Co.,* 68 Me. 279 (1878). Once the presiding justice ruled that plaintiff had failed to establish liability for the intentional infliction of emotional distress, the award of $10,000 in punitive damages could no longer stand. Accordingly, we sustain defendant's appeal on this point and set aside the jury's punitive damage award.

## II. *Vicnire v. Ford Life*

In response to specific interrogatories, the jury found that defendant Ford life was liable to plaintiff on a contract for credit disability insurance on the basis of two distinct legal theories. First, the jury found that James Murray, acting as an agent of Ford Life, told plaintiff that his disability would be covered by the policy, thereby estopping Ford Life from denying liability regardless of the express terms of the con-

3. Plaintiff also argues that the jury's award of $5,000 in compensatory damages should be sustained on the alternate theory that the award was intended to compensate plaintiff for pain and suffering resulting from defendant's tortious conversion of plaintiff's property. However, a reading of the instructions and the interrogatories leaves no doubt that the jury's award was founded on the independent tort of intentional infliction of emotional distress.

4. The interrogatories marked by the jury read as follows: ·
"VERDICT III
"6. Did plaintiff suffer any mental suffering as a result of any intentional, or reckless, bad motives, or acts of defendant, or conversion, if you find a conversion for which defendant is liable?
 Yes _X_ No ___
"7. If the answer to 6 is 'yes', in what amount do you assess compensatory damages?
 $5,000
"8. If the answer to 6 and 7 is 'Yes', in what amount, if any, do you assess exemplary or punitive damages?
 $10,000"
Interrogatory 8 submitted the issue of punitive damages to the jury on the theory that plaintiff could recover such damages only if he was legally entitled to recover on the tort of intentional infliction of mental distress.

tract. And, second, the jury found that defendant was liable to plaintiff under the express terms of the contract. Either theory standing alone would be sufficient to sustain the jury's verdict. Because we find that the jury's verdict may be sustained on the estoppel theory, we do not consider defendant's contention that the presiding justice's instruction and certain factual findings of the jury regarding the interpretation and application of the credit disability insurance contract were erroneous.

Defendant maintains that the evidence was insufficient to support the jury's finding that Ford Life's agent told plaintiff that his disability would be covered by the policy. We disagree. On direct examination, plaintiff was asked: "Did Mr. Murray [Ford Life's agent] ever tell you that it didn't cover any illnesses or injuries that occurred before you bought the car?" Plaintiff replied: "He told me that covered me if I even walked right out the door and fell down and broke a leg, I was covered. . . . He said a total disability, he said I was covered for it." Although the plaintiff's response is susceptible to conflicting interpretations, it was well within the province of the jury to resolve the ambiguity in favor of plaintiff and to conclude that Ford Life's agent told plaintiff that his disability would be covered by the policy. Accordingly, we affirm the judgment awarding plaintiff $2,904.42 in damages against defendant Ford Life.

III. *Vicnire v. Ford Life and Ford Credit*

During the course of this litigation, plaintiff requested and received a continu-

ance in excess of 30 days. The final issue in this case involves a determination of the effect of the continuance of the pre-judgment interest to be received by plaintiff. At the time plaintiff filed his complaint on April 28, 1975, 14 M.R.S.A. § 1602 provided that a successful party would receive interest from the time of filing of the complaint, unless he requested and received a continuance in excess of 30 days. In that event he forfeited all right to pre-judgment interest.[5] Before entry of judgment in the instant case on May 16, 1978, section 1602 was modified to provide, effective October 24, 1977, that a party who requested and received a continuance in excess of 30 days lost interest only for the duration of the continuance.[6] The presiding justice ruled that the amended version of section 1602 applied. Both defendants appeal that ruling.

We deny the appeals. The judgment on which interest is being computed was entered well after the effective date of the amendment to section 1602. As a matter of policy, the legislature concluded, effective October 24, 1977, that a plaintiff should recover pre-judgment interest for the entire period from the filing of his complaint except during any period he was not diligently pursuing his claim. The legislature by its amendment of section 1602 declared that forfeiture of all pre-judgment interest was too harsh a penalty to impose for obtaining a continuance. We can think of no logical reason why the legislature would not want its newly declared policy to apply to all judgments entered after the effective date of the amendment. Accordingly, the judgments in this action properly included inter-

5. The pertinent part of 14 M.R.S.A. § 1602, enacted by P.L.1969, ch. 397 (repealed eff. October 24, 1977), formerly provided:

"In all civil actions, except those actions involving a contract or note which contract or note contains a provision relating to interest, interest shall be assessed from the date on which the complaint is filed in court, provided that if the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days and the losing party at no time requests and obtains a continuance, interest will be assessed from the time of entry of judgment."

6. 14 M.R.S.A. § 1602 (Supp. 1978–79), as modified by P.L.1977, ch. 147 (eff. October 24, 1977), provides in pertinent part:

"In all civil actions, except those actions involving a contract or note which contract or note contains a provision relating to interest, interest shall be assessed from the date on which the complaint is filed in court, provided that if the prevailing party at any time requests and obtains a continuance for a period in excess of 30 days, interest will be suspended for the duration of the continuance."

est from the date the complaint was filed in court, April 28, 1975, to the date of the judgments, May 16, 1978, excluding the duration of the continuance obtained by plaintiff.

The entry is:

Cross-appeal of plaintiff denied.

Appeal of defendant Ford Life denied.

Appeal of defendant Ford Credit denied in part and sustained in part; judgment for plaintiff against defendant Ford Credit affirmed except that portion awarding $10,-000 exemplary or punitive damages, which is reversed. That judgment modified to read as follows: "JUDGMENT is ordered for plaintiff Peter Vicnire and against defendant Ford Motor Credit Company in an amount of $1,850.00 and interest and costs."

WERNICK and NICHOLS, JJ., did not sit.