Mary L. ROWE

v.

Louise BENNETT, et al.

Supreme Judicial Court of Maine.

Argued Nov. 15, 1985.
Decided Aug. 27, 1986.

Bernstein, Shur, Sawyer & Nelson, Joyce A. Wheeler (orally), Portland, for plaintiff.

Geoffrey A. Cummings (orally), Christopher D. Nyhan, Portland, for Bennett.

Frederick C. Moore (orally), Portland, for Diocesan Human Relations Services.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN and SCOLNIK, JJ.

SCOLNIK, Justice.

The plaintiff, Mary Rowe, appeals from an order of the Superior Court (Cumberland County) granting summary judgment in favor of the defendants, Louise Bennett and the Diocesan Human Relations Services Incorporated (hereinafter DHRS), pursuant to Rule 56 of the Maine Rules of Civil Procedure. In her complaint, the plaintiff asserts that she suffered mental and emotional distress as a result of Bennett's social involvement with the plaintiff's companion that occurred while the plaintiff was undergoing counseling and psychotherapeutic treatment with Bennett for problems in her relationship with that companion.[1]

1. All parties fail to recognize that the claims made in the plaintiff's amended complaint are

not properly before us. The trial justice denied

She alleges negligence on the part of Bennett and the failure on the part of the DHRS to supervise and to review the treatment given by Bennett. We vacate the judgment.

In support of its motion for summary judgment, the DHRS asserted that the complaint failed to state a claim on which relief could be granted and that the defense of charitable immunity barred the plaintiff's claim. Bennett joined only in that portion of the summary judgment motion that sought judgment based on the failure of the complaint to state a claim on which relief could be granted. At the hearing on the motion, the DHRS withdrew without prejudice the defense of charitable immunity. After considering the pleadings and the record before him, the trial justice granted summary judgment in favor of the defendants. Under Rule 56(c), summary judgment will be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that judgment should be entered as a matter of law. *Procise v. Electric Mutual Liability Insurance Co.*, 494 A.2d 1375, 1380 (Me.1985).

The facts before the Superior Court viewed in the light most favorable to the plaintiff, *see Hare v. Lumbermens Mutual Casualty Co.*, 471 A.2d 1041, 1043 (Me. 1984), are as follows. In January, 1981, the plaintiff began attending counseling sessions offered by the Community Alcoholism Services (hereinafter CAS), a substance abuse program carried out by the DHRS that provided out-patient counseling to any person who had problems related to alcohol. She sought CAS's assistance because of difficulties she was experiencing in her relationship with her companion, Jane W., with whom she had been living in a homosexual relationship for three years. Bennett was in the employ of CAS in the capacity of a social worker.[2] She holds a Master's degree in Social Work as well as an out-of-state certificate as a "graduate social worker." Bennett gave the plaintiff psychotherapeutic treatment in individual sessions approximately once a week from January, 1981, through June, 1981. These sessions involved discussions about the thoughts and feelings experienced by the patient during the previous week and generally related to the problems the plaintiff was having with Jane W. Shortly after the plaintiff commenced her therapy, Jane W. also started treatment with Bennett on a weekly basis. On several occasions, Bennett held joint therapy sessions with both the plaintiff and Jane W.

In June, 1981, Bennett stopped counseling the plaintiff on an individual basis, and transferred her to group therapy because Bennett had developed "some emotional feelings" toward Jane W. She did not reveal to the plaintiff her emotional involvement with Jane W. but instead falsely stated that CAS could no longer provide individual counseling because it was the policy of the program to limit individual counseling to a period of six months. The plaintiff's relationship with Jane W. ended about the same time that Bennett moved the plaintiff to group therapy. During July and August, 1981, when Bennett was in charge of therapy sessions for the group

the plaintiff's motion to amend her complaint. The plaintiff does not challenge that ruling.

**2.** According to 32 M.R.S.A. § 7001(8) (Supp. 1985), social work means

engaging in psycho-social evaluation and therapy ... to effect a change in the feelings, attitudes and behavior of a client, whether an individual, group or community, in response to a psycho-social situation.

"Psycho-social evaluations" include

the determination and examination by social workers of the psycho-social situation of an individual or group related to inter and intra personal stress, family background, family interaction, living arrangements and socio-economic problems and treatment, evaluation, plans and goals, including the diagnosis of mental illness and emotional disorders for the purpose of treatment and therapeutic intervention, but excluding the diagnosis of organic mental illness or treatment of any illness by organic therapy....

*Id.* § 7001(6).

that included the plaintiff, Jane W. and. Bennett frequently socialized together. This relationship intensified and in January, 1982, Bennett and Jane W. started living together. The plaintiff had ceased counseling with Bennett and CAS in late August, 1981.

The following month, the plaintiff commenced treatment with Dr. Joan Larkin, a board certified psychiatrist. It was the doctor's opinion that Bennett had breached her professional duty by seeing Jane W. socially while she was still treating the plaintiff and by placing her own interests above the interests of her patient. Dr. Larkin ascertained that the plaintiff felt abandoned and humiliated, suffered intense emotional turmoil and anguish manifested by disturbed sleep, loss of weight, poor concentration, crying spells and intermittent thoughts of suicide. Dr. Larkin concluded that the plaintiff was suffering from "acute reactive depression," which is "the development of depressive symptoms that are in direct consequences of an event or stress or life trauma." She identified Bennett's treatment of the plaintiff as the principal cause of plaintiff's condition. The plaintiff therefore claims that Bennett's conduct has caused her to suffer a psychological injury.

■■■ In order to prevail in this negligence action, the plaintiff must establish that the defendants were under a duty to conform to a certain standard of conduct and that a breach of that duty proximately caused an injury to the plaintiff. *Macomber v. Dillman,* 505 A.2d 810, 812 (Me. 1986). One who undertakes to render services in the practice of a profession owes a duty to exercise that degree of skill, care and diligence exercised by members of that same profession. *See, e.g., Taylor v. Hill,* 464 A.2d 938 (Me.1983) (doctors); *Sohn v. Bernstein,* 279 A.2d 529 (Me.1971) (lawyers). *See generally Restatement (Second) of Torts* § 299A (1965). Accordingly Bennett, as a qualified social worker who undertook treatment of the plaintiff, and DHRS, as Bennett's employer and supervi-

sor, were under a duty to provide care in accordance with the standards of practice applicable to similar professionals engaged in counseling and psychotherapy. Dr. Larkin stated that Bennett failed to adhere to the basic standards applicable to a psychotherapist when she continued to treat the plaintiff after Bennett became involved in a relationship with the plaintiff's primary companion. She stated that Bennett's conduct caused the plaintiff to suffer acute depression. We conclude that a genuine issue of fact exists in this case as to whether the defendants breached their respective duties and whether their conduct caused the plaintiff to suffer mental or emotional distress.

■■■ The more difficult issue presented is whether proof of an injury consisting solely of mental or emotional distress is sufficient to satisfy the requirement that damages be established before the tort of negligence is actionable. As a general rule, in order to recover for the negligent infliction of emotional or mental distress in the absence of physical injuries, the mental distress must be serious and accompanied by a physical impact. Alternatively, the existence of an underlying tort will support such a recovery. The foregoing rules have evolved from the following precedents.

Until our decision in *Wallace v. Coca-Cola Bottling Plants, Inc.,* 269 A.2d 117 (Me.1970), one could not maintain a negligence action premised solely on mental or emotional distress. Instead, to recover for mental distress, one was required to prove either a physical impact or blow, or a physical injury, in which case recovery for mental distress is permitted as damages that are parasitic to the underlying tort. *See Herrick v. Evening Pub. Co.,* 120 Me. 138, 140, 113 A. 16, 17 (1921). We stated in *Herrick:*

In case of physical injury to the person caused by negligence mental suffering resulting from such injury is a legitimate element of damage; but if no bodily injury is alleged or proved, there can be no premise upon which to base a conclusion

of mental suffering. Such elements of damage when there is no physical injury, are outside the principle of compensation. At common law it was well settled that mere injury to the feelings or affections did not constitute an independent basis for the recovery of damages.

.    .    .    .    .

*Id.* (citations omitted).

The plaintiff in *Wallace* suffered emotional trauma as a result of coming into contact with a foreign object contained in a Coca-Cola bottle while drinking from the bottle. Although the plaintiff could have recovered under the physical impact rule, since his lips came into contact with the foreign object, we did not apply the impact rule, but instead proposed a foreseeability test. The proposed test provided that

in those cases where it is established by a fair preponderance of the evidence there is a proximate causal relationship between an act of negligence and reasonably foreseeable mental and emotional suffering by a reasonably foreseeable plaintiff, such proven damages are compensable even though there is no discernable [sic] trauma from external causes.

269 A.2d at 121. We proposed the new rule because of the "incongruity of allowing damages for pain and suffering when accompanied by physical harm, however, [sic] slight, and denying it in those many cases in which the proof is clear there was mental suffering induced by a negligent act, but there was no physical impact." *Id.* However, we limited recovery for mental distress to those cases where the distress was substantial and manifested by objective symptomatology.

Twelve years later, in *Culbert v. Sampson's Supermarkets Inc.*, 444 A.2d 433 (Me.1982), we addressed the novel issue whether a bystander could recover for the negligent infliction of mental distress. The plaintiff in *Culbert*, a mother, witnessed her baby choke and gag on a foreign substance that was present in a jar of baby food. We recognized that since the court in *Wallace* could have permitted the plain-

tiff to recover under the then current impact rule, the foreseeability test proposed by the *Wallace* court constituted *obiter dictum. Id.* at 436. Nevertheless, we refused to apply the physical impact rule because it had been "thoroughly repudiated." *Id.* at 434. Instead, we declared that a bystander could maintain an action for mental distress if that distress was a reasonably foreseeable result of the tortfeasor's conduct that physically injured someone else. *Id.* at 438. "The psychic injury may be deemed foreseeable when the plaintiff bystander was present at the scene of the accident, suffered mental distress as a result of observing the accident and ensuing danger to the victim, and was closely related to the victim." *Id.* Implicit in our holding was the requirement that the wrongdoer's liability on the underlying tort first had to be established before recovery could be allowed for the negligent infliction of mental distress. We also overruled the requirement that in order to recover, the distress had to be manifested by objective symptomatology. In its place, we adopted the rule limiting recovery to "serious" mental distress. Serious mental distress exists "where a reasonable person normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the event." *Id.* at 437 (quotations and citations omitted). We did so because medical science had become sophisticated enough to provide reliable and accurate evidence regarding the causes of mental trauma. *See Id.*

In *Packard v. Central Maine Power Co.*, 477 A.2d 264, 266–68 (Me.1984), we applied the foreseeability test as enunciated in *Culbert* and held that the plaintiff could not recover for the negligent infliction of mental distress because of the lack of an underlying tort. The plaintiff had filed a complaint containing several counts, one of which alleged defamation and another that set forth a separate independent claim for the negligent infliction of mental distress resulting from the conduct that also consti-

tuted the alleged defamation. The plaintiff averred that he suffered "extreme mental distress and anxiety" in defending the criminal charges made against him that resulted from the defendant's representations to law enforcement officials that the plaintiff had committed a theft of services. The plaintiff did not prevail on the defamation claim. We stated that because the establishment of the wrongdoer's liability on the underlying tort was a condition precedent to recovery on the mental distress claim, the plaintiff did not have a viable cause of action. "Negligent infliction of emotional distress is not an independent tort, but is more properly to be perceived as subordinate to the principal cause of action." *Id.* at 268.

We recently applied the underlying tort principle in *Rubin v. Matthews International Corp.,* 503 A.2d 694 (Me.1986). In *Rubin,* the plaintiff sought to recover damages for emotional or mental distress that she suffered as the result of the defendant's failure to make a timely delivery of a memorial stone for a graveside unveiling ceremony. One of her claims was based on the negligent infliction of mental distress. We held that the plaintiff could not recover damages because no underlying tort existed. "[M]ental distress is insufficient in and of itself to establish the harm necessary to make negligence actionable, without either accompanying physical consequences, or an independent underlying tort." *Id.* at 698 (citing *Prosser and Keeton on Torts* § 54, at 361–62 (5th ed. 1984); 2 F. Harper & F.

James, *The Law of Torts* § 18.4, at 1031–32 (1956)).[3]

■ In the present case, the plaintiff claims to have suffered only mental and emotional distress as a result of the defendant's negligence. No physical impact occurred. Because mental distress is insufficient by itself to establish harm, an essential element of actionable negligence, no underlying tort exists. Since an underlying tort is a condition precedent to the recovery of damages for the negligent infliction of mental distress, the defendants argue that the plaintiff's claim should be barred. We hold that because of the nature of the psychotherapist-patient relationship, an action may be maintained by a patient for serious mental distress caused by the negligence of his therapist despite the absence of an underlying tort.

We are persuaded that this position is sound for the following reason. The rationale for requiring an independently actionable tort is that absent either tactile contact or the usual indicia of harm, no objective evidence exists that the defendant's negligence actually has caused the plaintiff to suffer emotional distress.[4] There is little likelihood, however, that objective evidence of mental distress will be unavailable in a claim by a patient against his psychotherapist. Given the fact that a therapist undertakes the treatment of a patient's mental problems and that the patient is encouraged to divulge his innermost

---

**3.** Emotional distress resulting directly from a non-tactile tort may be compensable when the requisite elements of the tort of intentional infliction of emotional distress are fulfilled. Those elements are that 1) the conduct be intentional or reckless; 2) the tortfeasor's conduct be extreme or outrageous; 3) the wrongful conduct and emotional distress be causally connected and 4) the emotional distress be severe. *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148, 154 (Me.1979). Absent tactile contact, a person's mental tranquility is also protected in the limited situation where a person intentionally or recklessly places another in fear of imminent harmful or offensive contact, thus fulfilling the requirements of the intentional tort of assault.

*See Prosser and Keeton on Torts* § 10 (5th ed. 1984).

**4.** In *Culbert,* a bystander case, we stated that objective symptomatology of the mental distress was not necessary because medical science could provide reliable evidence as to the cause of the mental trauma. *See* 444 A.2d at 437. However, the causal relationship between the tortfeasor's negligent conduct and the bystander's distress was otherwise demonstrated in that case by proof of physical injury to a close family member, with resulting distress to the plaintiff. *See generally Prosser and Keeton on Torts* § 54, at 366.

thoughts,[5] the patient is extremely vulnerable to mental harm if the therapist fails to adhere to the standards of care recognized by the profession. Any psychological harm that may result from such negligence is neither speculative nor easily feigned. Unlike evidence of mental distress occurring in other situations, objective proof of the existence *vel non* of a psychological injury in these circumstances should not be difficult to obtain. As this case illustrates, the severity of such an injury can be medically significant and objectively supportable. We therefore conclude that the reasons for precluding recovery for mental distress are not cogent here.

Accordingly, we hold that because of the unique nature of a psychotherapist-patient relationship, a patient may recover damages for serious mental distress resulting from the therapist's negligence despite the absence of an underlying tort. Since the plaintiff's complaint does state a claim on which relief can be granted and there are genuine issues of fact regarding the elements thereof, it was error to grant summary judgment in favor of defendants.

The entry is:

Judgment vacated.

Remanded for further proceedings consistent with the opinion herein.

NICHOLS and WATHEN, JJ., concurring.

McKUSICK, C.J., and ROBERTS and GLASSMAN, JJ., concurring.

We concur in the result. Nothing in the prior authority of this court contradicts a cause of action for the damages resulting from the negligent breach of a standard of care owed a plaintiff receiving psychotherapeutic treatment from a professional.

---

5. One court has described the particular nature of the psychotherapeutic process as follows:

> The nature of the psychotherapeutic process is such that disclosure to the therapist of the patient's most intimate emotions, fears, and fantasies is required. As pointed out in appellant's brief,
>
> "People usually enter psychotherapy because they have deep-seated conflicts and impairment of functioning which limit their ability to work effectively and to enjoy fully satisfying relationships with other people. To alleviate these blocks and conflicts, the therapist asks the patient to abandon 'rational thought' and to express thoughts and fears that may never have been revealed to anyone else. Indeed, these innermost thoughts are often so painful, embarrassing or shameful that the patient may never before have allowed himself to acknowledge them."
>
> The patient in psychotherapy knows that such revelations will be expected if the process is to be beneficial. In laying bare one's entire self, however, the patient rightfully expects that such revelations will remain a matter of confidentiality exclusively between patient and therapist.
>
> *In re B*, 482 Pa. 471, 485, 394 A.2d 419, 425–26 (1978).