AMERICAN LUMBER SALES COMPANY *vs.* FIDELITY TRUST COMPANY.

Cumberland.   Opinion March 14, 1928.

*Woodman, Whitehouse & Skelton,* for plaintiff.
*Cook, Hutchinson & Pierce,* for defendant.

SITTING: WILSON, C. J., PHILBROOK, DEASY, STURGIS, BARNES, BASSETT, JJ.

STURGIS, J. Assumpsit for recovery of moneys deposited in and withdrawn without authority from the defendant Bank by the plaintiff's district manager. The case was first sent to an auditor and comes before us on Report of the evidence below. By the terms of the Report the record includes the auditor's report, admissions of counsel, oral testimony and numerous exhibits. The case is to be determined, however, upon so much of the evidence as is legally admissible.

The American Lumber Sales Company (hereinafter referred to as "the Company"), with its home office in Philadelphia, was organized to dispose of the property of the Emergency Fleet Corporation. In February, 1920, it opened a branch office at Portland, Maine, and installed there as its district manager Fred O. Schoeppe.

Under authority from the Company, on February 11, 1921, the district manager opened an account with the defendant Bank and deposited therein from time to time thereafter moneys advanced to him by the home office for expenses of the local branch, together with checks received by him from the local sale of wood. The account was opened and carried under the title, "American Lumber Sales Company, Fred O. Schoeppe, District Manager." This account is termed by counsel on the brief as the "impressed fund," and that designation is here adopted.

On the same day, February 11, 1921, but without authority from the Company, the district manager opened a second account with the defendant Bank under the title, "American Lumber Sales Company, Fred O. Schoeppe, District Manager, Special Account." The original deposit in this "Special Account" was a draft from the Maine Central Railroad Company, payable to the American Lumber Sales Company in the sum of $2215.08, indorsed by Mr. Schoeppe as district manager.

It appears that prior to February 11, 1921, the Company had carried its local accounts with the First National Bank of Portland. The district manager, under authority from the home office, had conducted in the First National Bank an "impressed fund account," subject to his own check, and the Company itself had carried in the same Bank a "Special Account" subject only to checks drawn by the executives at the home office. While these accounts were so carried at the First National Bank, one Mr. Crory, a clerk in the employ of that institution, entered the employ of the Fidelity Trust Company, the defendant, and prior to February 11, 1921, introduced Mr. Schoeppe, the Company's district manager, to the treasurer of the Trust Company, and informed the latter of the nature and history of the Company's accounts with the First National Bank. The statement of the present treasurer of the defendant Bank is in part as follows:

"Q — Do you know whether the Fidelity knew that this Company had two accounts at the First National?

A — We knew they had had two accounts.

Q — The exact nature of those two accounts you didn't know I suppose?

A — We knew somewhat of the nature of the accounts. We knew that one of the accounts was controlled entirely by the Philadelphia office; the other account was subject to withdrawal by the district manager. We knew that a duplicate statement of the district manager's account was forwarded regularly to Philadelphia, and that the original statement on the Philadelphia account went to Philadelphia presumably monthly."

"Q — When did you get this information about the way the accounts were conducted at the First National?

A — I am not certain of the time. We were acquainted with the way the accounts were conducted at the First National due to the fact that our chief clerk at that time, Mr. Crory, had just recently returned to us from the First National.

Q — You got this information somewhere about the time these accounts started?

A — We must have at about that same time." (And) "As I recall, Mr. Norton, then treasurer, talked with Mr. Crory about the accounts, as Mr. Crory introduced Mr. Schoeppe to Mr. Norton."

The opening of these two accounts which we have thus reviewed, took place on February 11, 1921. On the next day, February 12th, the then treasurer of the defendant Bank, wrote the plaintiff Company the following letter:

"Fidelity Trust Company
Portland, Maine,

February 12, 1921.

American Lumber Sales Company,
        Philadelphia, Pa.

Gentlemen:

We have been favored with an account of the American Lumber Sales Company, Fred O. Schoeppe, District Manager.

That our files may be complete, will you kindly furnish us over an authorized official signature a letter authorizing Mr. Schoeppe

to conduct the account in that capacity and such other information as it may occur to you that will facilitate the proper handling of the account.

Assuring you of our appreciation of this account and of our earnest desire to serve you, we beg to remain,

Very truly yours,
(Signed) W. P. Norton, Treasurer."

The Company's reply came by early return mail:

"February 14, 1921.

W. P. Norton, Esq., Treas.,
Fidelity Trust Company,
Portland, Maine
Dear Sir:

In response to your letter of February 12, I beg to advice that Mr. F. O. Schoeppe, District Manager of this Company at Portland, Maine is authorized to conduct an account with your good bank.

All checks on this account will be drawn by Mr. Schoeppe as 'District Manager.'

Yours very truly,
American Lumber Sales Company
(Signed) J. B. Clement, Jr.,
JBC/McC                                      Secretary.
cc. to Mr. Fred O. Schoeppe, Dist. Mgr.
    260 Forest Ave., Portland, Me."

It is upon this correspondence that the Bank seeks justification for its subsequent conduct of the two accounts involved in this action. It seeks to establish in these letters authority for payment of the moneys of the Special Account upon the check of the district manager, but we are not convinced that its contention in this regard can be sustained.

The letter to the Company from the treasurer of the Bank of February 12, 1921, informed the Company of the reception of "*an* account of the American Lumber Sales Company, Fred O. Schoeppe, District Manager." It failed to disclose to the Company that the Bank had been "favored" with a second account to the credit of the Company marked "Special Account." The contents of this letter can only be fairly construed to refer to a sin-

gle account. It calls for reply and statement of authority in the district manager to conduct "the" account bearing the title designated in the letter, not of authority to conduct two accounts nor an account of like title but designated expressly "Special Account."

The reply of the Company was likewise limited. The limitations of the letter of inquiry of the Bank, we think, necessarily limit the scope of the letter of the Company in reply. The two must be read together, and so read confer upon the Bank the right only to accept a single account from the district manager and permit his withdrawal thereof by his check as "District Manager." And in the light of the knowledge then possessed by the officers of the bank as to the authority previously conferred upon the district manager to conduct the accounts at the First National Bank, we are of the opinion that the bank accepted the "special account" and permitted the district manager to conduct it at its peril.

Upon receiving the deposit from the district manager for the credit of the plaintiff Company, the relation between that Company and the defendant was that of depositor and banker, and the defendant became the debtor of the plaintiff for the amount of the deposit placed to its credit. *Heath* v. *New Bedford Safe Deposit etc. Co.*, 184 Mass., 481. The deposit was the plaintiff's property even though its existence was unknown. *Brown* v. *Daugherty*, 120 Fed., 526. Having accepted the deposit, a bank is protected in paying out the deposit only where it has an order from the owner of the deposit himself or one authorized to act for him. 3 R. C. L., 540; 7 C. J., 675, and cases sited. And while Mr. Schoeppe as district manager was in fact general agent for the local branch of the Company's business over which he exercised supervision, and in the absence of notice to the contrary was presumptively possessed of the powers of a general agent, *Wood* v. *Finson*, 89 Maine, 459, his principal had the right to limit his authority to conduct its bank deposits; and the bank, to the extent of its knowledge of these limitations, is bound by them. *Bryant* v. *Moore*, 26 Maine, 84; *Barnard* v. *Wheeler*, 24 Maine, 412, 418; 21 R. C. L., 908; 2 C. J., 569; Mechem on Agency, 191.

It is clear from the testimony of the defendant's treasurer that at the time the "impressed fund" and "special account" were opened the then treasurer of the defendant and its chief clerk knew of the established method under which the plaintiff's bank accounts had been conducted in this district, and no modification of this arrangement was communicated to them. They knew of the existing limitations upon the authority of the district manager, and the Bank is chargeable with their knowledge. *Hale et als* v. *Windsor Savings Bank et als*, 90 Vt., 487, 494; *Lowndes* v. *City National Bank*, 82 Conn., 8. The Bank knew that the "special account," to use the words of its treasurer, was "controlled entirely by the Philadelphia office," and that "the original statement of the Philadelphia account went to Philadelphia presumably monthly." It must be held to have known that withdrawal of this account by the district manager had never been authorized.

The defendant, however, invokes the rule that a bank depositor is under obligation to examine within a reasonable time and with reasonable care the account of the deposit rendered by the bank, together with vouchers or cancelled checks returned, and report within a reasonable time any errors discovered. 3 R. C. L., 533. It calls attention to the diversity of opinion existing in different jurisdictions as to the effect of delegating authority to an unfaithful employee to examine accounts evidencing his own wrong doing, but argues that under either of these rules the plaintiff was negligent.

In *First National Bank of Birmingham* v. *Allen*, 100 Ala., 476 it is held that knowledge of the dishonest employee is imputed to the depositor.

In *Critten* v. *Chemical National Bank*, 171 N. Y., 219, that Court takes the ground that the depositor is chargeable with such information as an honest employee unaware of the fraud would have acquired from an examination of the accounts.

In *Leather Manufacturers National Bank*, v. *Morgan*, 117 U. S., 96, 116, in a consideration of the delegation of the depositor's duty to examine his accounts to an employee who misappropriates the deposit, the Court holds that "while no rule can be laid down that will cover every transaction between a bank and

its depositor, it is sufficient to say that the latter's duty is discharged when he exercises such diligence as is required by the circumstances of the particular case, including the relation of the parties and the established or known usages of banking business."

This measure of duty placed upon the depositor by the United States Court accords with the concept of due care generally embodied in the term "negligence," and with the settled rules of law of this State determining liability for that wrong.

In the instant case, however, neither this rule nor the varying rules of other jurisdictions discussed, can apply. The plaintiff had no knowledge of the existence of the deposit. It did not authorize its district manager to open the account. It clearly did not delegate to him the duty of examining statements or vouchers. Its failure to supervise the deposit or the bank's account of it, upon the record, is attributable to its ignorance of the existence of the "special account."

Negligence presupposes a duty of taking care, and this in turn presupposes knowledge or its equivalent. *Smithwick* v. *Hall & Upson Co.*, 59 Conn., 261 ; 20 R. C. L., 14. There can be no neglect to perform a duty unless the person sought to be charged with negligence has knowledge of the condition of things which requires performance at his hands. *State* v. *Smith*, 65 Maine, 257, 266.

A careful examination of the evidence here reported fails to disclose facts upon which actual or constructive knowledge of the "special deposit," or its conduct by the district manager and the Bank, can be attributed to the plaintiff, or upon which a negligent omission to examine or supervise the defendant's accounts of it can be justly founded. The defense of negligence cannot avail.

The auditor's report shows deposits of checks in the "special account," all belonging to the Company, aggregating $6,664.37. The report shows withdrawals, upon checks of the district manager, for purposes foreign to the Company's business, of amounts aggregating $2135. Admissions of record establish further improper withdrawals aggregating $3271.79. Moneys equal in amount to the balance of the account were admittedly expended by Mr. Schoeppe in the Company's behalf. In an audit filed and made part of the record, the plaintiff attempts to show that some

part of these expenditures for the Company were made with moneys obtained from sources outside the "special account." This allocation of moneys thus admittedly expended for the Company is by no means clear. Upon the proof submitted we think the amount for which the defendant Bank can here be held chargeable by reason of the conduct of the "special account" must be fixed at $5406.79 and for that amount the Bank held liable.

In addition to the foregoing peculations, the district manager misappropriated $1,614.30 by means of a personal account opened in the defendant Bank under his own name. Into this account on June 22, 1921, he deposited a check for $600 made by the McDonald Mfg. Co., payable to the order of the plaintiff Company, bearing the indorsement, "American Lumber Sales Co. By Fred O. Schoeppe District Manager. Deposit in Special a/c Fred O. Schoeppe." On July 9, 1921, a check of the Maine Central Railroad Co., payable to the Company in the amount of $1,014.30, was indorsed in substantially the same form and accepted for deposit by the Bank in the district manager's personal account.

These checks on their face bore evidence that they were the property of the plaintiff, not of its district manager. Assuming that Schoeppe had authority to indorse the checks for deposit in his principal's accounts with the Bank, (which in case of the "Special Account" he did not have), such authority extended only to indorsement for the purposes of the Company's business and not to a transfer of the checks to himself personally or for his individual use.

A closely analogus state of facts appears in *Schmidt* v. *Garfield Nat. Bank*, 19 N. Y. Supp., 252. In that case, in the absence of the plaintiff, his clerk gained possession of checks payable to the plaintiff's order, indorsed each "C. A. Schmidt. Geo. Langard.", deposited them in the defendant bank in his personal checking account, and by subsequent withdrawals misappropriated the proceeds. The bank was held liable.

In *Wagner Trading Co.* v. *Battery Park Nat. Bank*, 228 N. Y., 37, the facts seem to bring the case directly in point. There the president of the Trading Company indorsed fifteen checks

payable to the Company, "Wagner Trading Company, C. J. Wagner, Pres.", and deposited them to the credit of his personal account with the defendant bank, which made collection in the usual course and paid out the proceeds from time to time on the personal check of Wagner. The Court says, citing as authority *Ward* v. *City Trust Co.*, 192 N. Y., 61, (recently cited with approval by this Court in *Gilman* v. *Carriage Co.*, 125 Maine, 108) : "When it (the bank) accepted the checks payable to the plaintiff and indorsed by Wagner as president of the plaintiff for deposit to the account of Wagner himself, it did so at its peril to ascertain whether Wagner had authority to indorse them and by his indorsement transfer the money to be paid thereon to his personal account." And again: "If Wagner had no such authority, title to the money in question never passed to the defendant and if it received. it, it did so without authority and must account and make payment to the owner."

In *The Standard Steam Specialty Co.* v. *Corn Exchange Bank*, 220 N. Y., 478, the Court says: "Any person taking checks made payable to a corporation, which can act only by agents, does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent . . . or is otherwise precluded by its conduct from setting up such lack of authority in the agent."

An extended discussion of decisions bearing on the question here at issue is found in the note in L. R. A. 1918 B, 576, and of more recent date in the note in 9 A. L. R., 346.

If authority be necessary, the foregoing seem to abundantly justify the conclusion that in the case at bar the defendant should reimburse the plaintiff for its losses through the Bank's acceptance of its checks for deposit on Schoeppe's personal account. The transaction was irregular on its face. Already two Company accounts were running with the Bank, one unknown to and unauthorized by the Company but of record in the Bank. For Schoeppe to offer for deposit in his personal account paper on its face payable to the Company, when there were in that institution Company accounts regularly receiving its deposits, was so contrary to the usual course of business that we think it should have put the Bank on sharp inquiry. The language of the Court in

*Knoxville Water Co.* v. *East Tennessee Nat. Bank*, 123 Tenn., 364, is pertinent.

"We think this is true whether the employee so offering such checks be president, manager, treasurer, or any other officer or agent of an employing corporation. And we think a bank, which under these circumstances accepts such a deposit to the individual credit of an employee, subject to his individual check and disposition in this way, has little ground upon which to urge that such an employee was thus acting within the apparent scope of his authority."

The aggregate amount for which the Bank can be here held is $7,012.09. Here, as before the auditor, demand prior to suit lacks proof. The plaintiff is entitled to interest from the date of the writ.

> *Judgment for plaintiff for $7,021.09 with interest thereon from the date of the writ to the date of judgment, the same to be computed and added by the Clerk below.*