appeal
**ENTERED** AUG 2 2 2014

STATE OF MAINE
YORK, SS.

MEREDITH RICHARDSON and )
CHRISTIAAN CLARK, )
)
      Plaintiffs, )
  v. )
)
GARY DECOSTE, PATRICIA )
DECOSTE, CASSANDRA )
)
DAVIDSON, JEREMY DAVIDSON, )
MICHELE COLLISHAW, and )
ADAMS COVE CONDOMINIUM )
ASSOCIATION, )
)
      Defendants. )

SUPERIOR COURT
DOCKET NO. CV-12-187
JON-YOR-07-18-14

ORDER ON DEFENDANTS'
MOTIONS FOR SUMMARY
JUDGMENT

I.    Background

This action arises from a number of incidents and occurrences concerning Plaintiffs'

ownership of one of the Adams Cove Condominiums in Kittery, Maine, and

membership on the Adams Cove Condominium Association (the "ACCA"). The ACCA

consists of six units comprised of three duplexes. Supp. S.M.F. ¶ 1. The ACCA is

governed by the Declaration of the Adams Cove Condominium Association (the

"Declaration") and the Bylaws of the Adams Cove Condominium Association (the

"Bylaws"). Supp. S.M.F. ¶ 3.

Plaintiffs claim that the issues presented in this action began after a dispute in 2008

between Plaintiff Richardson and Defendant G. DeCoste. Opp. S.M.F. ¶ 1. At the time,

Plaintiff Richardson was president of the ACCA. Opp. S.M.F. ¶ 1. Plaintiff Richardson

found, through the course of an investigation, that Defendant G. DeCoste was behind

on his association dues. Opp. S.M.F. ¶ 2. Plaintiffs attest that Defendant P. DeCoste,

who was the treasurer of the ACCA at that time, acted in a way to "cover" for her son,

1

against Defendants Collishaw, G. DeCoste and the ACCA for failing to protect the finances of the ACCA based on these facts.

Plaintiff Richardson reported mold growing on her wall to the ACCA by email on December 19, 2011. Supp. S.M.F. ¶ 24. Plaintiff had first realized moisture or dampness in her unit when she moved into the unit in 2003 or 2004. Supp. S.M.F. ¶ 20. At some point thereafter, "a few years ago," Plaintiff Richardson noticed mold on the wall of her unit. Supp. S.M.F. ¶ 21. Plaintiff Richardson remediated the mold by removing some of the wood on the outside of her unit and painting over the mold on the wall. Supp. S.M.F. ¶ 22. Plaintiff Richardson next noticed the mold in December 2011, at which point she contacted the ACCA. Supp. S.M.F. ¶¶ 23, 24. Defendants contend that the ACCA has taken steps to remedy any water intrusion from the outside of the common element foundation. Supp. S.M.F. ¶ 25. Plaintiffs contend that the remediation did not occur until April 2013 and it has yet to be shown whether the remediation fixed the problem. Furthermore, Plaintiffs argue that they were harmed by the delay in remediation.

Plaintiff Richardson reported to Defendant C. Davidson that mice were entering her unit on November 15, 2011. Supp. S.M.F. ¶ 33. Defendant C. Davidson responded the following day, telling Plaintiff Richardson to contact Defendant G. DeCoste. Supp. S.M.F. ¶ 34; Response. S.M.F. ¶ 34. Plaintiff sent another email to Defendant C. Davidson on November 16, 2011, which was met with a response from Defendant Collishaw who informed Plaintiff that the ACCA would fix the outside wall and suggest some exterminators for the inside of the unit. Supp. S.M.F. ¶¶ 35, 36. At some point between November 18 and November 21, Plaintiff contracted Abundant Wildlife to investigate the mouse situation. Supp. S.M.F. ¶ 37, Response S.M.F. ¶ 37. Plaintiffs contend that Plaintiff Richardson contracted with Abundant Wildlife pursuant to the

2

request of Defendant Collishaw. Response S.M.F. ¶ 37. Defendants contend that Plaintiff Richardson independently contracted with Abundant Wildlife. Supp. S.M.F. ¶ 37.

On November 23, 2011, Defendant Collishaw informed Plaintiff Richardson that the Association had selected Orkin to remediate the mouse issue and an appointment had been made for November 25, 2011. Supp. S.M.F. ¶ 38. Orkin made two visits. Supp. S.M.F. ¶¶ 39, 40. Orkin sprayed orange foam on the outside of the unit as part of the mouse remediation. Supp. S.M.F. ¶ 27. Plaintiffs asked the ACCA to remediate the orange foam immediately after it was installed because it was unsightly. Supp. S.M.F. ¶ 27. The ACCA did sand down and paint over the orange foam. Response S.M.F. ¶ 41. Plaintiffs claim that the remediation was only partial and that they were damaged by the loss of property value during the time prior to remediation, and the continued failure of the ACCA to remediate fully. Plaintiffs bring counts of negligence and breach of fiduciary duty for Defendants failure to remediate the drainage issues sooner.

Plaintiffs allege that Defendants DeCoste contacted the Kittery Fire Department and reported that Plaintiffs were smoking marijuana and burning trash in a barrel. Pl. Opp. S.M.F. ¶ 8. Plaintiffs further allege that Defendants DeCoste spread rumors that Plaintiff Clark was a drug dealer. Supp. S.M.F. ¶ 74; Response S.M.F. ¶ 74. Defendants dispute these allegations. Reply S.M.F. ¶ 47.

Plaintiffs allege that they were harassed by Defendants. Plaintiffs allege that in May 2009, Plaintiff Richardson wrote a letter to Defendant Gary DeCoste asking him to no longer park in her spot next to her unit. Opp. S.M.F. ¶ 4. Plaintiff further alleges that thereafter Defendant Gary DeCoste parked directly in front of her unit. Opp. S.M.F. ¶ 4.

3

Defendant DeCoste denies allegations that he intentionally obstructed Plaintiff's view of the river. Response S.M.F. ¶ 4.[1]

Plaintiff Richardson sought a protection from harassment order against Defendant Gary DeCoste and obtained a temporary protection from harassment order. Supp. S.M.F. ¶ 65. In addition to allegations that Defendant G. DeCoste was parking in a way to intentionally block their view of the river, Plaintiffs allege that they were harassed by Defendant G. DeCoste and Defendant Davidson in the following ways. Plaintiff Richardson understood a text message sent by G. DeCoste about parking to be threatening. Supp. S.M.F. ¶ 68; Response S.M.F. ¶ 68. Plaintiffs claim Defendants G. DeCoste and P. DeCoste maliciously made a report to the police concerning the Plaintiffs. Supp. S.M.F. ¶ 73; Response S.M.F. ¶ 73. Plaintiffs claim that after listing their unit for sale they put out a real estate display with flyers and that Defendants continually removed the flyers. Supp. S.M.F. ¶ 75; Response S.M.F. ¶ 75. Plaintiffs claim that Defendants vandalized their car, moved stones and cut flowers outside of Plaintiffs' unit, removed Plaintiffs' mail from Plaintiffs' mailbox, and purposefully shoveled snow into Plaintiffs' walkway. Supp. S.M.F. ¶¶ 76, 85, 86, 87; Response S.M.F. ¶¶ 76, 85, 86, 87. Plaintiffs' also claim that the Davidsons, who live in the unit directly above the unit owned by Plaintiffs, purposefully stomp around their apartment. Supp. S.M.F. ¶ 91; Response S.M.F. ¶ 91. Plaintiffs allege that Defendants conspired to remove Plaintiff Richardson from her role as president of the ACCA. Supp. S.M.F. ¶ 83; Response S.M.F. ¶ 83. Defendants deny all of Plaintiffs' claims.

---

[1] The Court is not required to consider statements of material fact that fail to cite to specific record material properly considered on summary judgment. M.R. Civ. P. 56(h)(4). Plaintiff has cited to the unauthenticated exhibits to the unverified complaint from Plaintiff's action seeking Protection from Harassment throughout the Opposing Statements of Material Fact. An unverified complaint is not record evidence properly considered on summary judgment. Levine v. R.B.K. Caly Corp., 2001 ME 77, ¶ 8, 770 A.2d 653; Deutsche Bank Nat. Trust Co. v. Raggiani, 2009 ME 120, ¶ 6, 985 A.2d 1.

4

Plaintiffs bring two counts of negligence and two counts of breach of fiduciary duty against Defendants G. DeCoste, C. Davidson, Collishaw and the ACCA for failing to protect Plaintiffs from harassment. Plaintiffs also bring a claim of negligent infliction of emotional distress against Defendants Collishaw, C. Davidson, G.DeCoste, and the ACCA and a claim of intentional infliction of emotional distress against G. DeCoste, P. DeCoste, J. Davidson, C. Davidson, Collishaw and the ACCA for conspiring to harass and for willfully breaching their fiduciary duty.

Plaintiffs bring a count of breach of fiduciary duty against Defendants Collishaw, G. DeCoste, and the ACCA for failing to carry out their duties in good faith by failing to protect the finances of the ACCA, failing to maintain common spaces, and failing to protect Plaintiffs from harassment. Finally Plaintiffs bring their demand for punitive damages as a separate claim.

Defendants now move the court for Summary Judgment.

II.     Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Beal v. Allstate Ins. Co., 2010 ME 20, ¶ 11, 989 A. 2d 733 (Me. 2010); Dyer v. Department of Transportation, 2008 ME 106, ¶ 14, 951 A.2d 821 (Me. 2008). When reviewing a motion for summary judgment, the court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. Id.

A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. Reliance National Indemnity v. Knowles Industrial Services Corp., 2005 ME 29, ¶7, 868 A.2d 220; citing Univ. of Me. Found. v. Fleet Bank of Me., 2003 ME 20, ¶20, 817 A.2d 871. Furthermore, "a fact is material if it could potentially affect the outcome of the case." Id.

5

III.    Discussion

    A. Negligence

Plaintiffs have brought multiple counts of negligence against Defendants G. DeCoste, C. Davidson, Collishaw, and the ACCA. In order to prove a cause of action for negligence, Plaintiff must be able to show that Defendants had a duty to Plaintiffs, which they breached, causing Plaintiff damages. Reid v. Town of Mount Vernon, 2007 ME 125, ¶ 14, 932 A.2d 539. Defendants argue that Plaintiffs have failed to show that Defendants owed Plaintiff a duty. Whether or not a defendant has a duty to a plaintiff is a question of law to be determined by the court. Alexander v. Mitchell, 2007 ME 108, ¶ 14, 930 A.2d 1016. The court will review each claim individually for a duty owed by Defendant to Plaintiff.

The first count of Plaintiffs' complaint is a cause of action of negligence for failure to maintain, repair and replace common elements. Plaintiffs cite to Article II, Section 2.3.6 of the Bylaws to demonstrate the duty of the association to "regulate the use, maintenance, repair, replacement and modification of the Common Elements." Defendant concedes a duty to maintain "common elements". Supp. S.M.F. ¶ 4.[2] Plaintiffs specifically cite to the ACCA's delay in repairing the drainage around the exterior wall of their unit, causing mold in their unit; the ACCA's refusal to reimburse Plaintiffs for services rendered by Abundant Wildlife; and the ACCA's failure to fully remediate the orange foam installed by Orkin. Defendants argue that there was no breach of this duty. Defendants contend that the duty was not breached because Plaintiffs did not timely inform the ACCA of damages that would have been in the ACCA purview to fix. Therefore, Defendants argue there was no duty. Furthermore,

---

[2] As discussed later in this order in the section concerning breach of fiduciary duty, there remains a question of material fact as to whether the water damage and the entry of mice into the unit fall into the ACCA's duty to maintain common elements.

because some of the maintenance issues were within the Plaintiff's unit, they were not the duty of the ACCA to maintain.

Plaintiffs allege that Defendants negligent failure to repair drainage on the exterior wall of Plaintiffs' unit caused mold on the interior of the unit. "There can be no neglect to perform a duty unless the person sought to be charged with negligence has knowledge of the condition of things which requires performance at his hands." McPherson v. McPherson, 1998 ME 141, ¶ 10, 712 A.2d 1043 (citing Am. Lumber Sales Co. v. Fid. Trust Co., 127 Me. 65, 141 A. 102, 105 (1928)). Defendants argue that because Plaintiff Richardson did not inform the ACCA when she first noticed the mold in 2003 or 2004 and she instead attempted to remediate the problem herself by removing some wood on the outside of the unit and painting over the mold on the wall, Defendants are not liable for any mold that developed prior to the time at which Plaintiffs did inform the ACCA of the problem. Defendants argue that the ACCA had no duty to remediate until it had knowledge of the problem. The court finds that Defendants did not have a duty to fix the drainage problem until they were informed of the problem in 2011.

Plaintiffs contend that a casualty occurred. According to the Bylaws, Article VII, Section 7.1, "In the event of damage to or destruction of all or any part of the Property as a result of fire, or other casualty ... the Executive Board on behalf of the Association shall promptly arrange for and supervise the prompt repair, replacement and restoration thereof." Plaintiffs do not allege any specific casualty, only that there is evidence that a casualty occurred because water damage is present. Because Plaintiffs do not provide any facts to support the theory of casualty, the court finds that Defendants had no duty pursuant to Article VII, Section 7.1 of the Bylaws to repair damage from casualty. Summary Judgment is granted to Defendants on Plaintiffs' theory of casualty.

7

Defendants' Motion for Summary Judgment is granted with regards to Plaintiffs' claim of negligence for failure to fix the exterior wall of their unit and any drainage issues that occurred to Plaintiffs' unit as a result of failure to remediate prior to the date on which Plaintiffs informed the ACCA that there was a drainage issue. There remains a genuine issue of material fact with regards to whether damage occurred between the time Plaintiffs notified the ACCA of the drainage issues and when the ACCA did remediate the drainage issues in the summer of 2013.

Plaintiffs' claim of negligent failure to maintain common areas includes Plaintiffs' claims that the ACCA failed to remediate the mouse problem, failed to reimburse Plaintiffs for contracting Abundant Wildlife, permitted Orkin to install orange foam around the exterior of their unit, and failed to sand down and paint over the orange foam for an extended period of time. Defendants argue that they only had a duty to address any mice with regards to common spaces, and they did not have a duty to address Plaintiffs' complaint of mice in the manner dictated by Plaintiffs. Defendants cite to America v. Sunspray Condominium Association, for the contention that the business decisions made by a corporation or condominium association are not reviewable by the court without a showing that they were the result of fraud or bad faith. Am. v. Sunspray Condo. Ass'n, 2013 ME 19, ¶ 14, 61 A.3d 1249. There is no dispute that after being notified of the mouse problem by email on November 15, 2011, the ACCA hired Orkin to remediate the problem. The Orkin appointment was on November 25, 2011. Plaintiffs contend that to this day there remains some orange foam on the exterior of their unit that has not been remediated. Furthermore, Plaintiffs contend that Defendants acted in bad faith by delaying and then hiring Orkin against Plaintiffs' wishes. ACCA did address the mouse issue, and did remediate. The court grants Defendants' Motion for Summary Judgment with regards to Plaintiffs' claims of

8

negligent failure to maintain common elements by failing to address the mouse problem and for permitting Orkin to install orange foam around the exterior of their unit, finding no evidence of bad faith on Defendants' part. There remain genuine issues of material fact concerning whether Defendants told Plaintiffs to seek out a specialist to determine whether and where mice were getting into the unit, whether Defendants stated that the ACCA would reimburse for this service, and whether Plaintiffs have been damaged by ACCA's continued failure to remediate the orange foam.

Plaintiffs bring a count of negligence against the ACCA, Defendant Collishaw, and Defendant G. DeCoste for failure to protect the ACCA finances from Defendant G. DeCoste. Plaintiffs assert that G. DeCoste fell behind on his dues payments to the association. Plaintiffs allege negligence on the part of Defendants the ACCA, G. DeCoste and Collishaw in failing to enforce dues payments against all members. Plaintiffs claim damages of lost income to the ACCA in the form of G. DeCoste's dues. Defendant G. Decoste admits to having fallen behind on payment of dues to the association. However, Defendant G. DeCoste has since repaid the ACCA the dues and the late penalty. There is no remaining damage. The court grants Defendant's Motion for Summary Judgment with respect to this count.

Plaintiffs bring two counts of negligence against Defendants G. DeCoste, C. Davidson, Collishaw, and the ACCA for failure to protect Plaintiffs from harassing behavior. Plaintiffs bring the first count for failing to protect Plaintiffs from the harassing behavior of G. DeCoste. Plaintiffs bring the second count for failure to protect Plaintiffs from the harassing behavior of Defendants J. and C. Collishaw. The behavior Plaintiff alleges is detailed at the beginning of this order. Defendants argue that, if the harassing behavior occured, which they deny, Defendants do not have a duty to protect Plaintiffs from harassing behavior. "Ordinarily, individuals have no duty to protect

9

others from the criminal conduct of a third party. There are, however, exceptions to this general proposition. An actor has a duty to protect those with whom he stands in a special relationship." Gniadek v. Camp Sunshine at Sebago Lake, Inc., 2011 ME 11, ¶ 17, 11 A.3d 308. A fiduciary relationship may be a type of special relationship, however "not all fiduciary relationships are special relationships; only those where there is a 'great disparity of position and influence between the parties' will suffice." Id. at ¶ 19.

Plaintiffs argue that Defendant's duty arises from a fiduciary relationship that qualifies as a special relationship. Defendants disagree, arguing that the fiduciary relationship that exists for the purposes of maintaining the condominium is not emblematic of a "great disparity of position and influence between the parties." Plaintiffs have not provided facts to support a great disparity of position and influence sufficient to show a special relationship, therefore, the ACCA did not have a duty to protect Plaintiffs from harassment. The same is true of Defendants G. DeCoste, C. Davidson, and Collishaw. The court grants Summary Judgment in favor of Defendants on the two counts of negligence for failure to protect Plaintiffs from harassment.

### B. Breach of Fiduciary Duty

Plaintiff has also brought corresponding claims of breach of fiduciary duty for each set of facts that led to a claim of negligence. For a claim of breach of fiduciary duty Plaintiff must show a fiduciary duty owed to Plaintiff (a fiduciary relationship), a knowing breach of that duty, and damages.

> Simple recitations of a trusting relationship will not suffice for identifying a fiduciary duty. In order to survive a motion to dismiss a claim for breach of fiduciary duty, the plaintiff must set forth specific facts constituting the alleged relationship with sufficient particularity to enable the court to determine whether, if true, such facts could give rise to a fiduciary relationship.

10

Bryan R. v. Watchtower Bible & Tract Soc. of New York, Inc., 1999 ME 144, ¶ 21, 738 A.2d 839. "[T]he elements of a fiduciary relationship are (1) the actual placing of trust and confidence in fact by one party in another, and (2) a great disparity of position and influence between the parties at issue." Ramsey v. Baxter Title Co., 2012 ME 113, ¶ 7, 54 A.3d 710 (citation omitted). Whether a defendant owes a plaintiff a duty of care is a matter of law. Id. at ¶ 11.

Plaintiffs allege the ACCA and the members of the executive board of the ACCA owed Plaintiffs a fiduciary duty. Plaintiffs cite to the ACCA's ability to create and enforce rules as evidence of a fiduciary relationship. Defendants have questioned Plaintiffs' ability to show that Defendants owed Plaintiff a duty with respect to the claims made. The court discusses each claim in turn.

Plaintiffs claim Defendants the ACCA, G. DeCoste, and Collishaw owed Plaintiffs a fiduciary duty to maintain, repair and replace common elements. The court does grant summary judgment on this matter with respect to Defendants G. DeCoste and Collishaw. Defendants G. DeCoste and Collishaw may be members of the ACCA, and the ACCA may owe Plaintiffs a fiduciary duty, however Plaintiffs have offered no evidence to support a finding of fiduciary duty for Defendants G. DeCoste and Collishaw as individuals.

Similar to Plaintiffs' claim of negligence, Plaintiffs contend that Defendants have demonstrated the element of fiduciary duty through Article II, Section 2.3.6 of the Bylaws. Because it is the purview of ACCA to maintain common elements, Plaintiffs attest that they trust the ACCA to maintain the common elements and that the ACCA has significantly greater influence on issues concerning maintenance. Defendants argue that the Declaration does not require the ACCA to maintain the units themselves and that all of the claims made by Plaintiff are for maintenance and repairs within the unit.

11

The Declaration defines the boundaries of the units in Section 3.5. Plaintiff does not contest that many of the claims made require maintenance within the unit, however, Plaintiff claims that because the mice and water damage are the result of forces outside of the unit the ACCA's duty according to Article II, Section 2.3.6 of the Bylaws has been triggered. The court finds that Plaintiff has demonstrated that Defendant has a fiduciary duty to maintain and repair common elements. There is a question of material fact as to whether maintenance and repair of water damage or the entry of mice from the exterior of the unit constitute maintenance and repair of common elements.

The court finds, following the same reasoning as in its analysis of Plaintiff's negligence claim, that there remain issues of fact concerning whether Defendants told Plaintiffs to seek out a specialist to determine whether and where mice were getting into the unit, whether Defendants stated that the ACCA would reimburse for this service, whether Plaintiffs have been damaged by ACCA's continued failure to remediate the orange foam and whether damage occurred between the time Plaintiffs notified the ACCA of drainage issues and when the ACCA remediated the drainage issues in the summer of 2013.

Plaintiffs claim Defendants the ACCA, G. DeCoste, C. Davidson, and Collishaw owed Plaintiffs a fiduciary duty to protect the finances of the association from G. DeCoste. As discussed in the negligence section, Plaintiffs have not sufficiently demonstrated damages. Therefore, Plaintiffs have not shown a prima facie case for breach of fiduciary duty. The court grants summary judgment on this claim.

With respect to Plaintiffs claims for breach of fiduciary duty against the ACCA, G. DeCoste, C. Davidson, and Collishaw for failing to protect Plaintiffs from the harassing behavior of G. DeCoste and J. and C. Davidson, as the court discusses in the similar counts of negligence, Plaintiffs have not provided evidence of a special relationship that

would give rise to a duty on Defendants' part by showing an actual placing of trust or confidence by Plaintiffs in the ACCA and a great disparity of position and influence between the parties. Because there is no fiduciary relationship, the court grants summary judgment to Defendant on this count of breach of fiduciary duty. See Gniadek v. Camp Sunshine at Sebago Lake, Inc., 2011 ME 11, ¶ 17-19, 11 A.3d 308.

### C. Defamation

Plaintiffs bring a claim of defamation against Defendants G. DeCoste and P. DeCoste for calling the Police and reporting that Plaintiff Clark was smoking marijuana. Defendants move the court to grant summary judgment on this count. Common law defamation consists of:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and
> (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Lester v. Powers, 596 A.2d 65, 69 (Me. 1991) (citing Restatement (Second) of Torts § 558 (1977)). Plaintiffs assert that the statements made to the police, and conveyed by email to Defendant M. Richardson by Defendant P. DeCoste, were both false and defamatory.[3] Plaintiffs assert that Defendants DeCoste made the statements maliciously. Further, Plaintiffs plead that the statements are actionable irrespective of special harm claiming that the report was a slanderous implication of criminal behavior. Plaintiffs allege that although the possession of a small amount of marijuana is a civil infraction in Kittery, not a crime, it is still viewed by the general public as a criminal act and therefore has the reputational effect of criminal accusal.[4]

---

[3] Defendants deny that any such statements were made.
[4] Possession of marijuana remains a federal crime pursuant to the Controlled Substances Act, 21 U.S.C. § 811.

13

The law of defamation was written to protect an individual's reputation. See Saunders v. VanPelt, 497 A.2d 1121, 1124-25 (Me. 1985). ("[W]ords falsely spoken are slanderous per se if they relate to a profession, occupation or official station in which the plaintiff was employed.") Allegations of marijuana possession rise to the level of reputational harm envisioned by slander per se. The court finds that Plaintiffs have set out a prima facie case for defamation and that questions of material fact remain as to what was said and the intent of publication. The court denies Defendants' Motion for Summary Judgment with respect to Plaintiff's claim of defamation.[5]

D. Emotional Distress

Defendants move the court for summary judgment on Plaintiffs' claims of negligent infliction of emotional distress and intentional infliction of emotional distress. Plaintiffs have brought a claim of negligent infliction of emotional distress against Collishaw, C. Davidson, G. DeCoste, and the ACCA. Plaintiffs have brought a claim of intentional infliction of emotional distress against Collishaw, C. Davidson, J. Davidson, G. DeCoste, P. DeCoste and the ACCA.

The concept of recovery for purely mental and emotional suffering separate from physical damage is a relatively new legal concept. See Wyman v. Leavitt, 71 Me. 227 (1880); Herrick v. Evening Express Pub. Co., 120 Me. 138, 113 A. 16 (1921); Gammon v. Osteopathic Hosp. of Maine, Inc., 534 A.2d 1282, 1284 (Me. 1987). In 1970, the Law Court adopted a rule allowing for recovery where there is "substantial and objectively manifested mental and emotional suffering proximately caused by an act of negligence even though there [was] no discernable trauma from external causes." Gammon, 534 A.2d at 1284 (citing Wallace v. Coca-Cola Bottling Plants, Inc., 269 A.2d 117 (Me.1970)).

---

[5] Plaintiff has also pled that Defendant DeCoste told Defendant E. Skidmore that Plaintiff Clark was a drug dealer. Complaint ¶ 147; Response S.M.F ¶ 47. There is no record citation to support this contention.

Nine years later, the Law Court recognized and distinguished the tort of intentional infliction of emotional distress in Vicnire v. Ford Motor Credit Co. Vicnire v. Ford Motor Credit Co., 401 A.2d 148, 153-55 (1979).

> [A] plaintiff may recover damages for emotional distress resulting from the tortious conduct of a defendant in three distinct situations. First, as traditionally provided, mental distress or "pain and suffering" accompanying physical injury caused by tortious conduct is compensable. Second, as established in Wallace, a plaintiff may recover damages for emotional distress resulting from negligent conduct (even though that conduct caused no direct physical injury) if the distress is "substantial and manifested by objective symptomatology," that is, results in illness or bodily harm. And, third, as recognized in this opinion, a defendant is subject to liability if he engages in extreme or outrageous conduct that intentionally or recklessly inflicts severe emotional distress upon another.

Vicnire v. Ford Motor Credit Co., 401 A.2d 148, 154-55 (Me. 1979). In Vicnire, the Court distinguishes negligent and intentional infliction of emotional distress by the initial showing required by a plaintiff. For a claim of negligent infliction of emotional distress, a plaintiff must demonstrate that the negligent conduct of the defendant caused emotional harm so significant that it manifested itself in physical symptoms. Id. For a claim of intentional infliction of emotional distress, a plaintiff must show that the defendant's conduct was so extreme or outrageous that defendant intentionally or recklessly inflicted emotional distress on plaintiff.

Defendants challenge Plaintiffs' claim of negligent infliction of emotional distress on the basis of Plaintiffs' have not made a showing of a special relationship, therefore Plaintiffs have not made out a *prima facie* case for negligent infliction of emotional distress. A showing of a special relationship is one possible way of showing that emotional distress would be foreseeable from the negligent acts of a defendant, which is an element of the claim. ." Culbert v. Sampson's Supermarkets Inc., 444 A.2d 433, 434-38 (Me. 1982). However, a showing of a special relationship is not the only way to show foreseeability. In this case, Plaintiffs were not bystanders, but were in fact the victims of

15

the events. The court finds that, if Plaintiff's allegations are found to be true, emotional distress would have been foreseeable by the actors themselves: Collishaw, C. Davidson and G. DeCoste. Neither foreseeability of harm nor duty can be imputed on the ACCA.

The court finds that Plaintiffs have made a sufficient showing of substantial distress manifested by objective symptomatology for a *prima facie* showing of for negligent infliction of emotional distress. Plaintiffs assert that Plaintiff Richardson "has been on anti-anxiety medication and under the regular care of professionals due to the harassment and stress at Adams Cove." Opp. S.M.F. ¶ 66.[6] There remain questions of fact concerning the alleged negligent acts and the damages suffered by Plaintiffs. The court denies Defendants' Motion for Summary Judgment on Plaintiffs' claim of negligent infliction of emotional distress with respect to Collishaw, C. Davidson and G. DeCoste. The court grants Defendants' Motion for Summary Judgment on Plaintiffs' claim of negligent infliction of emotional distress with respect to the ACCA.[7]

Defendants challenge Plaintiffs' claim of intentional infliction of emotional distress on the grounds that Plaintiffs have failed to show that Defendants' conduct was so extreme or outrageous that Defendants intentionally or recklessly inflicted emotional distress on Plaintiffs. The issue of whether alleged conduct is sufficiently extreme or outrageous to meet the above standard is an issue for the court to determine. Champagne v. Mid-Maine Medical Center, 1998 ME 87, ¶16, 711 A.2d 842, 847; Gray v. State of Maine, 624 A.2d 479, 484 (Me. 1993).

---

[6] Plaintiffs cite to their own Answers to Interrogatories to support this conclusion. As a non-expert, Plaintiff's "testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." M.R. Evid. 701.

[7] The claim remains with respect to the individual defendants because Plaintiffs allege the distress was caused by the individual defendants' actions. Plaintiffs have not established any duty on behalf of the ACCA to protect Plaintiffs from harassing behavior. Judgment is granted on claims of emotional distress with respect to the ACCA.

Plaintiffs bring the claim of intentional infliction of emotional distress alleging that Plaintiffs' parking space and view have been intentionally and repeatedly blocked; that Defendants have parked in Plaintiffs' parking spot; that Defendant P. DeCoste filed a frivolous police report; that Defendants G. and P. DeCoste defamed Plaintiffs; that Defendant DeCoste sent threatening text messages; that Defendants conspired to remove Plaintiff Richardson from the role of president of the ACCA; that Defendants vandalized Plaintiffs' cars; that Defendants generally permitted other association members to harass Plaintiffs; that Defendants removed the real estate flyers from the box on Plaintiffs' property; that Defendants permitted Orkin to spray orange foam around Plaintiffs property; and that Defendants refused to maintain common areas. All of these allegations, taken individually, do not rise to the level "so extreme and outrageous as to exceed all possible bounds of decency". However, when viewed together, the court finds that the behavior of the individuals does meet the *prima facie* standard and presents genuine issues of material fact concerning which activities occurred as presented by Plaintiff.[8] While the court finds questions of fact regarding Plaintiffs' claim of intentional infliction of emotional distress directed against Defendants Collishaw, C. Davidson, J. Davidson, G. DeCoste, P. DeCoste, the court does not find that Plaintiffs have made a *prima facie* showing with respect to the ACCA. The court denies Defendant's motion for Summary Judgment on Plaintiffs' claim of

---

[8] In order to prove a claim of intentional infliction of emotional distress, a plaintiff:

> must present evidence that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from the defendant's conduct; (2) the conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶25, 48 A.3d 774 (citing Lyman v. Huber, 2010 ME 139, ¶¶ 16, 21-23, 10 A.3d 707).

intentional infliction of emotional distress with respect to Defendants Collishaw, C. Davidson, J. Davidson, G. DeCoste, P. DeCoste. The court grants Defendant's motion for Summary Judgment on Plaintiffs' claim of intentional infliction of emotional distress with respect to the ACCA.

### E. Punitive Damages

Defendants move the court for summary judgment on Plaintiffs' requested relief in the form of punitive damages. "In Maine, a plaintiff may recover punitive or exemplary damages when the defendant commits a tortious act with actual or implied malice toward the plaintiff." Maine Civil Remedies § 4-4(a). Furthermore, "[m]alice can be implied where the defendant's deliberate conduct is sufficiently 'outrageous,' but it cannot be implied 'by the defendant's mere reckless disregard of the circumstances.'" Lougee Conservancy v. CitiMortgage, Inc., 2012 ME 103, ¶ 27, 48 A.3d 774. Plaintiffs have made a *prima facie* showing of "outrageous" conduct, as is discussed with reference to Plaintiffs' claims of emotional distress. With respect to Plaintiffs' remaining claims of emotional distress, dismissal of Plaintiffs' request for punitive damages would be inappropriate at this time.

### IV. Conclusion

The court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' counts of negligence and fiduciary duty for failure to maintain and repair common elements with respect to the following issues: the hiring and reimbursement for Abundant Wildlife, remediation of the orange foam installed by Orkin and the remediation of water damage and drainage problems after the ACCA was notified of their existence.

The court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' count of negligent infliction of emotional distress with respect to Defendants Collishaw, C. Davidson and G. DeCoste. The court GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' count of negligent infliction of emotional distress with respect to Defendant ACCA.

The court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' count of intentional infliction of emotional distress with respect to Defendants Collishaw, C. Davidson, J. Davidson, G. DeCoste, P. DeCoste. The court GRANTS Defendants'

Motion for Summary Judgment on Plaintiffs' count of intentional infliction of emotional distress with respect to Defendant ACCA.

The court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' count of defamation.

The court DENIES Defendants' Motion for Summary Judgment on Plaintiffs' plea for punitive damages with respect to Defendants Collishaw, C. Davidson, J. Davidson, G. DeCoste, P. DeCoste. The court GRANTS Defendants' Motion for Summary Judgment on Plaintiffs' plea for punitive damages with respect to the ACCA.

DATE: 7/18/14

_____
John O'Neil, Jr.
Justice, Superior Court

ATTORNEY FOR PLAINTIFF:
AMY B MCGARRY
MCGARRY LAW OFFICES
PO BOX 1208
KENNEBUNK ME   04043


ATTORNEYS FOR DEFENDANTS:
THOMAS MCKEON
JOSEPH L CAHOON
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME   04112-9545

STATE OF MAINE
YORK, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-12-187
JON - YOR - 6/18/2013

MEREDITH RICHARDSON and )
CHRISTIAAN CLARK, )
)
Plaintiffs, )
v. )
)  ORDER
GARY DECOSTE, )
PATRICIA DECOSTE, )
CASSANDRA DAVIDSON, )
JEREMY DAVIDSON, )
MICHELE COLLISHAW and )
ADAMS COVE CONDOMINIUM )
ASSOCIATION, )
)
Defendant. )

I.    Background

This case arises out of a dispute concerning the membership of the Adams Cove

Condominium Association, the maintenance of the units pursuant to decisions made by

the members of the Association, and alleged harassment of Plaintiffs by condo unit

owners. Plaintiffs have filed a complaint against five other condo owners and the

Association alleging four counts of Negligence, four counts of Breach of Fiduciary Duty,

Defamation, Intentional Infliction of Emotional Distress, Negligent Infliction of

Emotional Distress, and she has made a request for punative damages.

Defendants Jeremy Davidson and Patricia Decoste Move to Amend their

Answers. Both filed pro se answers stating in a single sentence that they denied

everything. Plaintiff moves for Judgment against Jeremy Davidson for Failure to File an

Answer (on the basis that Plaintiff was not properly served) and for Judgment against

Patricia Decoste for Failure to File a Sufficient Answer. Plaintiff also Moves the Court to

Appoint a Property Manager for Adams Cove Condominium Association.

1

II.     Motion for Judgment for Failure to File Sufficient Answer and Motion to Amend Answer

"[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Me. R. Civ. P. 15. "If the moving party is not acting in bad faith or for delay, the motion will be granted in the absence of undue prejudice to the opponent." 1 Field, McKusick & Wroth, *Maine Civil Practice* § 15.4 (2d ed.1970); *Holden v. Weinschenk*, 1998 ME 185, 715 A.2d 915, 917. In the current case, Plaintiffs have offered no evidence of bad faith on the part of Defendants Jeremy Davidson and Patricia Decoste. Defendants both filed timely answers putting Plaintiffs on notice of their intent to participate in the case. No undue prejudice will be caused by allowing Defendants to amend. The Court Allows Defendants Jeremy Davidson and Patricia Decoste's Motions to Amend and Denies Plaintiff's Motions for Judgment for Failure to File Sufficient Answers.

III.    Motion to Appoint Property Manager

Plaintiff has cited to no legal authority or condominium association bylaw to support her Motion to Appoint a Property Manager. Furthermore, Defendant the Association has already agreed to complete the work requested on Plaintiff's unit. If Plaintiff seeks appointment of a property manager as injunctive relief for the harms she alleges, such as the Association's failure to make the requested improvements to her unit, she has not met the four part test as laid out in *Ingraham v. University of Maine*.[1] Without

---

[1] "Before granting a preliminary or permanent injunction, the Court must find that four criteria are met:
(1) that plaintiff will suffer irreparable injury if the injunction is not granted,
(2) that such injury outweighs any harm which granting the injunctive relief would inflict on the defendant,

2

any legal authority to appoint a Property Manager, and with Plaintiff's request that the Court order improvements be made to her unit moot, the Court Denies Plaintiff's Motion to Appoint a Property Manager.

IV.    Conclusion

The Court Grants Defendants Patricia Decoste and Jeremy Davidson's Motion to Amend Answer, Denies Plaintiffs Motions for Judgment Against Jeremy Davidson for Failure to File an Answer and Patricia Decoste for Failure to File a Sufficient Answer, and Denies Plaintiff's Motion to Appoint a Property Manager.


DATE:    6/18/13                                    _____
                                                    John O'Neil, Jr.
                                                    Justice, Superior Court

---

(3) that plaintiff has exhibited a likelihood of success on the merits (at most, a probability; at least, a substantial possibility),

(4) that the public interest will not be adversely affected by granting the injunction."
Ingraham v. Univ. of Maine at Orono, 441 A.2d 691, 693 (Me. 1982). Because Defendant the Association has already agreed to make the improvements Plaintiff requests, there is no irreparable harm shown. Furthermore, without irreparable harm, Plaintiff's harm does not outweigh the harm to Defendants of appointment of a property manager. Plaintiff has not shown likelihood of success on the merits. Finally, a granting of a motion to appoint a property manager on so scarce authority could be adverse to public interest.

3

ATTORNEY FOR PLAINTIFFS:
AMY MCGARRY
MACGARRY LAW OFFICES
PO BOX 1208
KENNEBUNK ME  04043


ATTORNEY FOR DEFENDANTS:
THOMAS MCKEON
RICHARDSON WHITMAN LARGE & BADGER
PO BOX 9545
PORTLAND ME  04112-9545